581 A.2d 212

**COMMONWEALTH of Pennsylvania**

v.

**Robert RAKES, Appellant.**

Superior Court of Pennsylvania.

Submitted June 4, 1990.

Filed Oct. 10, 1990.

Petition for Allowance of Appeal
Denied Feb. 19, 1991.

Richard Werner, Asst. Public Defender, Pittsburgh, for appellant.

Sandra Preuhs, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before FORD ELLIOTT, HOFFMAN and HESTER, JJ.

HOFFMAN, Judge:

This appeal is from a judgment of sentence for statutory rape, involuntary deviate sexual intercourse, and corruption of a minor. Appellant contends that the trial court erred in (1) allowing the Commonwealth to introduce into evidence a letter written by the victim's mother; and (2) admitting the

442

hearsay testimony of two witnesses. For the reasons that follow, we affirm.

On March 28, 1987, appellant was arrested and charged with one count each of statutory rape, involuntary deviate sexual intercourse, indecent assault, and corruption of a minor. The charges were based on allegations of sexual contact between appellant and his minor stepdaughter that occurred on several occasions between 1980 and 1986.[1] On June 23, 1988, following a jury trial, appellant was found guilty of statutory rape, involuntary deviate sexual intercourse, and corruption of a minor.[2] Timely post-verdict motions were filed and denied, and on February 3, 1989, appellant was sentenced to an aggregate term of imprisonment of five-to-twenty years. This timely appeal followed.

The facts giving rise to the charges against appellant were aptly summarized by the trial court as follows:

The victim stated that the incidents of sexual abuse by [appellant] initially started when she was in middle school and that [appellant] would put his hand in her "vaginal area" while giving her horsey-back rides in the North Side area of Pittsburgh. [N.T. June 21–23, 1988 at 24–25.] The victim then testified that while visiting [appellant] on the North Side at a house on Charles Street, "We would have intercourse where he would put his penis inside of my vagina area.". [*Id.* at 26.] Subsequently, the victim testified to having sexual relations with [appellant] in the basement of the family church in the Hill District [*Id.* at 38], at a house in the Hill District [*Id.* at 29], and on a bus [*Id.* at 30]. The victim even testified that [appellant] would "rub her vagina" while visiting her at the Schuman Center, where she was placed for behavioral problems. [*Id.* at 33.] In short, the victim testified that the sexual incidents occurred "Mostly every time my mother was gone. Every time my mother wasn't home or something." [*Id.* at 35.] The incidents continued until

1. The victim was approximately eight or nine years old when the contact began.

2. At trial, a demurrer was sustained to the charge of indecent assault.

)

the victim was placed in the Circle C home (for troubled youths) and returned from a visit with [appellant] smelling of alcohol. After this event, a counselor at the home, Yvonne Bunatti, inquired of the victim about "[h]er [s]ecret" that the victim had previously mentioned, and the victim told the counselor the entire story about the sexual abuse. [*Id.* at 88–96.]

Trial Court Opinion at 2.

Appellant initially contends that the trial court erred by allowing the Commonwealth to enter into evidence, during cross-examination of the victim's mother, a letter written to the victim by her mother. The letter stated in pertinent part the following:

I do not feel bad about court. You are doing the right think [sic]. In my heart I do not hold anything against you. I am praying for you. I know God is on your side. My love will not change. I respect you because I know it will not be easy. Do not be threatened ... You will not be asking yourself should I have done the right thing. You are doing the right thing. Try not to dwell on it. Just do it.

N.T. June 21–23, 1988 at 187–88.

Appellant maintains that this letter was improperly admitted into evidence because the Commonwealth failed to disclose it prior to trial, despite the fact that appellant had requested discovery. Appellant argues that the Commonwealth's failure to disclose was in violation of Pa.R.Crim.P. 305B(1)(f) which mandates discovery of "any tangible objects, including documents, photographs, fingerprints, or other tangible evidence."[3]

---

**3.** Pa.R.Crim.P. 305B(1)(f) provides in pertinent part:

In all court cases, on request by the defendant, ..., the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence....

*Id.*

The Rules themselves contemplate situations where the Commonwealth does not discover evidence pretrial. Thus, according to Pa.R.Crim.P. 305D, "[i]f prior to or during trial, either party discovers additional evidence ... which is subject to discovery under this rule ... such party shall promptly notify the opposing party or the court of the additional evidence...." Moreover, our Supreme Court, in *Commonwealth v. Bonacurso*, 500 Pa. 247, 455 A.2d 1175 (1983), noted that the prevailing view in this Commonwealth is that "the prosecution does not violate discovery rules when it fails to provide the defense with evidence that it does not possess and of which it is unaware during pre-trial discovery...." *Id.*, 500 Pa. at 251 n. 3, 455 A.2d at 1177 n. 3.

Here, it is undisputed in the record that the Commonwealth was unaware of the existence of the letter until the first day of trial, and that the prosecutor informed defense counsel of the existence of the letter as soon as he became aware of it. N.T. June 21–23, 1988 at 43. Thus, it is apparent that the Commonwealth complied with the discovery rule and *Bonacurso*. Appellant, nevertheless, alleges that the admission of the letter was specially prejudicial because counsel "did not have the opportunity to prepare sufficiently for his direct examination of [the victim's mother]." *See* Brief For Appellant at 10. We cannot agree.

The mother of the victim was the first witness presented in the defense's case in chief. She testified that the victim may have resented her for not trying to obtain custody of the victim. *See id.* at 128–29. The apparent purpose of her testimony was to support her husband, appellant, by suggesting that her daughter may have had a motive to fabricate the charges against him. *See* N.T. June 21–21, 1988 at 122–31. On cross-examination, the Commonwealth proffered the letter to impeach the mother's testimony, by suggesting that she had been supportive of her daughter bringing these charges against appellant.

When viewed in the context of the entire trial, the effect of this impeachment was minimal. The mother's

testimony, even in its best light, was not particularly help-ful to appellant's case.[4] Indeed, the record reflects that counsel himself had difficulty articulating the significance of the mother's testimony. *See id.* at 140–42. During trial, the following discussion ensued at sidebar between the court and counsel for appellant:

THE COURT: [ ] Now what was the purpose of putting [the victim's mother] on? What was the purpose of putting her on the witness stand? You called her as your witness.

MR. PALETTA: Number one, Your Honor, calling the victim's mother to testify in the defense's case. It raises an inference. Number two—

THE COURT: [ ] [W]hat inference did she raise[?]

MR. PALETTA: [ ] The fact that she testified in favor of the defendant, her husband, in this case should raise an inference that—

THE COURT: Do you feel that she has testified in favor of her present husband?

MR. PALETTA: To a degree, Judge, not completely. I've been surprised at one or two responses to questions, but to a degree, yes.

THE COURT: What did you think—what was your pur-pose in putting her on the witness stand?

MR. PALETTA: Number one, just in favor of the hus-band.

THE COURT: Well, wait a minute. Is it your impression that—do you think she has testified in favor of her husband? You glean that from the testimony?

MR. PALETTA: Judge, I attempted to establish her basis for her motive argument, basis of resentment. . . .

\* \* \* \* \* \*

*See* N.T. June 21–23, 1988 at 140–41. In light of the above-mentioned facts, we are satisfied that the introduc-tion of the letter did not unduly prejudice appellant. Thus,

---

**4.** For example, on cross-examination, the mother conceded that appel-lant had a number of opportunities to be alone with the victim. *See* N.T. June 21–23, 1988 at 133–37, 152–54.

because the Commonwealth promptly disclosed the letter once it discovered it, and because this late discovery did not prejudice appellant, we hold that the trial court properly admitted the letter into evidence.[5][6]

 Appellant next contends that the trial court erred in permitting the testimony of both a counselor and a psychologist employed by a treatment center where the victim ·resided for three months. Appellant asserts that their testimony, which related statements made by the victim to them that implicated appellant, was inadmissible hearsay. We cannot agree.

 It is well-settled that testimony regarding prior statements made by a declarant is admissible when the declarant is present in court and available for cross-examination. *See Commonwealth v. Hamilton,* 376 Pa.Super.

5. Appellant relies on, *inter alia, Commonwealth v. Contakos,* 492 Pa. 465, 424 A.2d 1284 (1984) and *Commonwealth v. Grayson,* 466 Pa. 427, 353 A.2d 428 (1976), which state that the discovery rules are based on the principle that "the defense [is] entitled to examine the statement of the witnesses in order to have a fair opportunity to cross-examine the witnesses." *See* Brief For Appellant at 9 (quoting *Commonwealth v. Grayson, supra,* 466 Pa. at 429, 353 A.2d at 429). Appellant's reliance on this line of cases is misplaced. Here, the victim's mother was appellant's *own witness.* As the Commonwealth aptly notes, "appellant's counsel was in a different position with respect to [the victim's mother], *his own witness,* than defense counsel is with respect to prosecution witnesses as to whom his only knowledge of their likely testimony will come from review of their previous statements." *See* Brief

For Appellant at 9.

6. Appellant also contends that the letter should not have been admitted into evidence because questions concerning its contents exceeded the scope of direct examination. As the Commonwealth notes, appellant failed to raise this issue in his post-verdict motions, and it is therefore waived. We note, however, that, in *Commonwealth v. Snoke,* —— Pa. ——, 580 A.2d 295 (1990), our Supreme Court recently reiterated that the scope of cross-examination is largely within the discretion of the trial court and will not be reversed in the absence of a clear abuse of discretion or an error of law. *See id.* at ——, 580 A.2d at 300, (citing *Commonwealth v. Schmidt,* 437 Pa. 563, 263 A.2d 382 (1970)). In this case, it can be inferred from the mother's direct testimony that she did not believe the victim's allegations against appellant. Thus, the Commonwealth could properly impeach this portion of her testimony with the letter in question which tended to show that the mother may have believed her daughter was telling the truth. Accordingly, even if appellant had not waived this claim, it would be meritless.

404, 409, 546 A.2d 90, 93 (1988) (citations omitted); *see also Commonwealth v. Fanelli*, 377 Pa.Super. 555, 559, 547 A.2d 1201, 1203 (1988) (en banc). Moreover, this rule specifically has been applied in cases where the declarant is a child victim of a sexual assault. Thus, in *Fanelli*, we held that the testimony of a police officer that she was told by a six-year-old that a sexual assault happened at a particular time was not hearsay because the jury was afforded the opportunity to observe the declarant at trial, and the declarant was available for cross-examination. *See Commonwealth v. Fanelli, supra*, 377 Pa.Superior Ct. at 559, 547 A.2d at 1203.

The facts related to appellant's claim are as follows. The Commonwealth's first witness was the victim. She testified as to several incidents of sexual contact between herself and appellant. *See* N.T. June 21–23, 1988 at 24–37. She also testified to confiding in a counselor and a psychologist at Circle C (the treatment center where she resided) regarding these incidents. *Id.* at 39. Subsequently, a counselor at the Circle C program testified that the victim had told her that appellant had had sex with her from the time she was eight or nine years old. *See id.* at 89–96.[7] In addition, a psychologist at Circle C testified that in counseling sessions the victim had related essentially the same account to him. *See id.* at 115–18. The victim in this case was fifteen years old at the time of trial. Moreover, the victim was present in court, testified, and was subject to cross-examination. Appellant thus had an opportunity to question the victim with regard to her allegations of sexual abuse, and the jury was able to view the victim at trial in order to assess her credibility. Thus, as we stated in *Fanelli*, "the prejudices sought to be avoided with the implementation of the hearsay rule were obviated." *Commonwealth v. Fanelli, supra*, 377 Pa.Superior Ct. at 559, 547 A.2d at 1203. In light of the fact that the victim was present at trial and available for cross-examination, we conclude that the trial court did not err in admitting the testimony of the counselor and the psychologist.

7. At the time she was admitted to Circle C, the victim was approximately fourteen years old. *See* N.T. June 21–21, 1988 at 96.

We should emphasize that this case is distinguishable from *Commonwealth v. Haber*, 351 Pa.Super. 79, 505 A.2d 273 (1986), upon which appellant places principal reliance. *See* Brief For Appellant at 15–16. In *Haber*, the victims were aged four and five at the time of the alleged sexual abuse. *Id.*, 351 Pa.Superior Ct. at 80, 505 A.2d at 274. Furthermore, the five-year-old victim in that case was not permitted to testify to the identity of the alleged molester. *Id.*, 351 Pa.Superior Ct. at 81, 505 A.2d at 274. However, the mothers of both victims were permitted to testify at trial as to what the victims had told them about the molestation, which included statements from the victims concerning the identity of their assailant. *Id.* We noted that "this testimony was crucial to the Commonwealth's case because the testimony of the children themselves consisted mostly of monosyllabic answers to leading questions, and both children repeatedly stated that they were unable to remember details about what happened." *Id.* The *Haber* court further noted that the testimony of both mothers were admitted despite the limitation on the one victim's testimony, which prevented her from being questioned about her identification of her molester. *Id.*, 351 Pa.Superior Ct. at 84, 505 A.2d at 276. For this reason, we held in *Haber* that the testimony of the victims' mothers as to what their children had told them was inadmissible hearsay. *Id.*, 351 Pa.Superior Ct. at 81, 505 A.2d at 274. Here, unlike *Haber*, the victim is fifteen years old, was available at trial for full cross-examination, and the case against appellant was fully established through the victim's testimony. The out-of-court testimony here did not include details concerning elements of the offense that the victim herself was unable to provide. Thus, *Haber* does not require reversal in this case.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.