616 A.2d 669

COMMONWEALTH of Pennsylvania,

v.

James POLSTON, Jr., Appellant.

Superior Court of Pennsylvania.

Submitted Aug. 31, 1992.

Filed Nov. 10, 1992.

236

Louis T. Savino, Jr., Philadelphia, for appellant.

Alan M. Rubenstein, Dist. Atty., Doylestown, for Com., appellee.

Before CAVANAUGH, OLSZEWSKI and MONTGOMERY, JJ.

OLSZEWSKI, Judge:

This is an appeal from judgment of sentence entered against defendant James Polston, Jr. For the reasons that follow, we affirm.

Polston was convicted of various sex offenses after a non-jury waiver trial in front of The Honorable Michael J. Kane, Jr. He was found guilty of, among other offenses, rape, involuntary deviate sexual intercourse, statutory rape, and incest. After trial, current counsel for Polston entered an appearance and filed supplemental post-trial motions, which were denied. After judgment of sentence was entered, this timely appeal followed. Polston claims that: (i) he did not voluntarily waive his right to a jury trial; (ii) videotape and audiotape evidence of the victim daughters was wrongfully admitted into the trial; and (iii) his trial counsel, for numerous reasons, rendered ineffective assistance. We will discuss each of these contentions in turn.

238

### I. Polston effectively waived his right to a jury trial.

■ Rule 1101 of the Pennsylvania Rules of Criminal Procedure provides that a defendant may waive a jury trial after the judge has ascertained that the waiver is knowing and intelligent. The Rule also provides that the colloquy between the judge and the defendant shall appear on the record. The colloquy, in order to sufficiently inform defendant of the import of his decision to waive a jury trial, must apprise defendant that a jury would be selected from members of the community, that they must render a unanimous verdict, and that he would be allowed to participate in selecting the jury. *Commonwealth v. Miguel,* 409 Pa.Super. 429, 598 A.2d 71 (1991); *Commonwealth v. Shablin,* 362 Pa.Super. 289, 524 A.2d 511 (1987).

■ The record contains ample discourse between the court and Polston regarding Polston's choice to waive a jury trial. The following exchange is enlightening:

The Court: [Your attorney] has just said to me and the District Attorney has said to me that you and Mr. Bateman have indicated that you desire to waive your right to a trial by jury and have this matter tried before me alone. Is that correct, sir?

The Defendant: That is correct, Your Honor.

The Court: You understand, do you not, sir, that you have an absolute right to a jury trial and if you should decide to exercise that right you and Mr. Bateman and Mr. Houck would select twelve members of the community to determine what the facts are and determine whether you are guilty or not guilty of any of the charges presently confronting you.

In a jury trial, the jury determines what the facts are. I tell them what the law is and then the jury applies the law to the facts and then renders a verdict of guilty or not guilty.

If you decide to waive a jury trial, then it would be my duty to determine the facts and to apply the legal principles to those facts.

In a jury trial all twelve jurors would have to agree as to whether you are guilty or not guilty of any or all of the counts of the criminal information. In other words, their verdict would have to be unanimous as to every count.

You understand the difference between a jury trial and a non jury trial sir?

The Defendant: Yes, Your Honor.

(N.T. 1/7/91 pp. 4-5.)

Polston nevertheless claims that his waiver of a jury trial was not knowing and intelligent. Polston relies on a remark that he made during the colloquy between him and the judge:

The Court: Is there anything you don't understand about the difference between a jury trial and a non jury trial and your waiver of a right to a jury trial?

The Defendant: I don't think there's anything I don't understand, Your Honor.

(N.T. 1/7/91 pp. 4-5.)

Polston argues that this statement indicates that he was not clearly aware of the rights he waived. We reject this contention. Polston's statement was taken out of context and ignores the content of the colloquy as a whole.

The trial judge thoroughly explained the import of Polston's decision to waive his right to a jury trial, and Polston acknowledged unequivocally that he understood the effect of his decision. The record is clear, and is flatly inconsistent with Polston's contention that he did not understand his rights. We therefore conclude that Polston knowingly, intelligently, and voluntarily waived his right to a jury trial.

II. Admission of videotape and audiotape evidence.

Polston argues that evidence of videotape and audiotape interviews was improperly admitted into evidence. We agree with this contention. Reversal is not warranted, however, because we find that the admission of this evidence was harmless error.

In order to thoroughly discuss Polston's contentions, a brief factual background is necessary. In August of 1990, Polston was arrested and charged with numerous sex crimes after

having allegedly molested and sexually abused his two daughters, hereinafter referred to as M.P. and R.P. Both daughters were under the age of ten at the time the alleged abuse occurred.

Before charges were filed against Polston, M.P. and R.P. were interviewed by Lisa Lentz, a counselor employed by the Bucks County Children and Youth Special Services Agency, and Darrin Baughman, a Perkaskie Borough, Bucks County police officer. Both interviews took place at the Perkaskie Borough Police station. R.P.'s interview was videotaped and M.P.'s was audiotaped. Based on the incriminating information elicited from the children, the present charges were filed against Polston.

Polston was tried in early 1991. At trial, the Commonwealth called both children to testify concerning the events which they had described in their earlier interviews with Ms. Lentz and Officer Bowman. After the defense had an opportunity to cross-examine R.P. and M.P., the Commonwealth called Ms. Lentz. Ms. Lentz testified concerning her experience and training in the field of child abuse. After Ms. Lentz testified that her professional duties include investigating allegations of possible child sexual abuse and that she had interviewed the victims in this case, the following dialogue occurred between the court, Mr. Bateman (Polston's counsel), and Mr. Houck (the district attorney):

Mr. Bateman: Judge, I've listened to the tape, and I've reviewed the transcript. I'll agree it's accurate.

Mr. Houck: At this time your honor, the Commonwealth would request to—this is a videotape that's in the machine, have you looked at the videotape or would you rather, I'll admit that tape into evidence so that you could read the transcript first and then look at the tape because I really think you have to see both. I don't think you can read anything because you really have to look at the kid as she's testifying.

The Court: Is there any objection?

Mr. Bateman: I'm going to object to the introduction of this evidence. I'm not sure for what purpose it's being offered.

We had the witnesses testify. If it's being offered as a prior consistent statement, note my objection for the record. I have another objection. Because there are several questions asked of this witness along with the office, I don't believe the questions themselves are evidence. I think at best answers to those questions are, for example, for you to read what—let this witness testify to what the officer said is hearsay.

The Court: Well, I agree the questions are not admissible, Mr. Bateman. But aren't the answers admissible under *Commonwealth versus Rakes* [398 Pa.Super. 440, 581 A.2d 212 (1990) ] and also under the cases having to do with prior consistent statement[s].

Mr. Bateman: Yes, sir. I've reviewed that case yesterday. As you know we reviewed that case.

The Court: Well, assuming that I were to rule that only the answers are admissible as evidence, would that cure your objection? [1]

Mr. Bateman: Yes, sir, it would.

The Court: All right. That will be our ruling then. The evidence isn't offered for any other purpose, is it, Mr. Houck?

Mr. Houck: Substantive evidence of prior consistent statements.

1. We note that an argument could be made that defense counsel waived his initial objection to the admission of the videotape as a prior consistent statement. This argument was not made by either the Commonwealth in its brief or the trial judge in his opinion denying the post-trial motions. All parties involved discussed the merits of the issue, and we believe the trial court and the Commonwealth did so under a misapprehension of the law. It would be anomalous for us to foreclose ourselves from addressing the issue. We must consider the sensitivity of defendants' rights as well as the practical effect of erroneous evidentiary rulings. Since the basis for counsel's original objection is clear from the record, as well as the trial court's rational for admitting the evidence, we are not hampered in any way from thoroughly reviewing the issue. *Cf., Commonwealth v. Satchell*, 306 Pa.Super. 364, 452 A.2d 768 (1982) (defendant's failure to preserve issues for appeal by failing to list on the statement of matters complained of does not preclude review on merits if effective review not defeated by that failure).

242

The Court: All right.

(N.T. 1/8/91 pp. 39–40.)

■ We hold that admission of the videotaped and audio-taped interviews of the child victims of sexual abuse as substantive evidence was improper.

As we quoted above, the trial court admitted the tapes as substantive evidence pursuant to the hearsay exception pertaining to prior consistent statements. The simple fact is that our Supreme Court, contrary to some decisions from this Court, has never held that prior consistent statements may be admitted as substantive evidence. In *Commonwealth v. Hutchinson*, 521 Pa. 482, 556 A.2d 370 (1989), the Supreme Court delineated the proper use of the prior consistent statement.

In *Hutchinson*, defendant was convicted on charges of rape, involuntary sexual deviate intercourse, and robbery. Apparently, defendant, while in custody, made a statement to a detective that refuted his involvement in the crime.[2] Defense counsel attempted to elicit the statement from the detective to whom the statement was made, but the court sustained a hearsay objection by the Commonwealth. Defendant claimed on appeal that his counsel was ineffective for failing to pursue the admission of the statement. The contention was that the statement would have bolstered both the defendant's and his alibi's testimony, which had been impeached by the Commonwealth.

The Supreme Court noted that counsel is not ineffective if he or she fails to pursue a frivolous claim. *Hutchinson*, at 484–485, 556 A.2d at 371. The Court then explained that the prior consistent statement exception to the hearsay rule is so limited that it would have been a waste of counsel's time to persist. In explaining the proper use of prior consistent statements, the Court stated that:

2. The statement was never formally transcribed, but in substance defendant stated, "I have been at my grandmother's house on Camac Street and was going home when a cop stopped me. I don't know anything about raping or robbing anyone." *Hutchinson*, 521 Pa. at 485, 556 A.2d at 371.

a prior declaration of a witness whose testimony has been attacked and whose credibility stands impeached, which, considering the impeachment, the court will allow to be proved by the person to whom the declaration was made, in order to support the credibility of the witness. Because such statements are hearsay, their use as a means to rehabilitate the credibility of an impeached witness' testimony is severely limited; and such statements are admissible only if it is alleged that the witness' present testimony is recently fabricated or the result of corrupt motives. Furthermore, *evidence of such statements is admissible only in rebuttal and then only for the purpose of showing that that which the witness now testifies to has not recently been fabricated.*

\* \* \* \* \* \*

If one testifies that they did a certain thing at a given time, they may be challenged that they said something different before. Such is impeachment by a prior contradictory statement. Ordinarily, that one has always said the same thing is subsumed in their testimony and need not be buttressed by evidence of prior consistency, unless that consistency, by allegation of recent fabrication is challenged. When challenged, evidence of prior and continued consistency may be offered. Evidence of prior consistency, absent such challenge is not required and is essentially cumulative and repetitious. To regularly allow testimony of prior consistency may easily become a device to merely augment the credibility of witnesses by others.

*Id.* at 486–488, 556 A.2d at 372 (citations omitted) (emphasis added).

The Court found that although defendant's testimony had been impeached by several inconsistencies, there was no charge of recent fabrication. Thus, counsel was not ineffective for refusing to pursue the prior consistent statement, as doing so would have been frivolous.

■ According to *Hutchinson*'s explicit command, the prior consistent statement's use as a trial tactic is severely limited.

First, a consistent statement may be admitted only in rebuttal, and not as substantive evidence. Second, the statement may be admitted in rebuttal only if the witness's testimony has been challenged as recent fabrication. The purpose of the evidence is to "rehabilitate" a witness's credibility after it has been challenged, not to prove the truth of the matter it asserts. *See* McCormick, *Evidence*, § 49 (1st ed. 1954).

This Court has recently grappled with admission of a victim's hearsay statements as prior consistent statements in a child sexual abuse case. In *Commonwealth v. Smith*, 402 Pa.Super. 257, 586 A.2d 957 (1991), we held that hearsay testimony of police officers concerning a victim's out-of-court statements were not admissible insofar as the statements exceeded the permissible "rehabilitative" purpose for the exception to the hearsay rule. In *Smith*, defendant was on trial for various offenses resulting from the alleged sexual assault of his granddaughter. The granddaughter, referred to as S.L., testified at trial concerning the alleged incidents of abuse. The child provided rather scant depictions of the various events. Her mother, a social worker, and several police officers testified in much greater detail concerning what S.L. had told them during interviews and conversation.[3] Defense counsel, when cross-examining S.L., asked her if her memory was better now, or when she talked to the police officers and social worker some months earlier. She responded that her memory was better earlier, but she "wouldn't make up a lie like this." *Id.* at 267, 586 A.2d at 963. We held that the out-of-court statements made by S.L. were not admissible as prior consistent statements to the extent that they augmented or supplemented her trial testimony. *Id.* at 270, 586 A.2d at 964. The rationale behind this holding is a simple application of the rule espoused by the Supreme Court in *Hutchinson*. That is, the prior consistent statements may be used only for purposes of rehabilitating the witness's credibility to the extent that her testimony was challenged. The prior

---

**3.** The mother, social worker and police officers testified before S.L. The trial court allowed the testimony as prior consistent statements subject to S.L.'s corroboration of the former testimony.

statements may not be used for substantive purposes, and thus the supplemental statements were improperly admitted.

The trial court admitted the videotape testimony of the child witness in this case under the authority of *Commonwealth v. Rakes*, 398 Pa.Super. 440, 581 A.2d 212 (1990). In *Rakes*, the defendant was likewise on trial for rape, involuntary deviate sexual intercourse, and corruption of a minor. The alleged victim testified at trial, followed by her counselor and her psychologist who testified concerning statements made by the victim while she was a patient at a treatment center. Our Court upheld the admission of the out-of-court statements. In doing so, we stated that, "[i]t is well-settled that testimony regarding prior statements made by a declarant is admissible when the declarant is present in court and available for cross examination." *Id.* at 446, 581 A.2d at 216. The rationale for this rule is that the declarant's presence in the courtroom and availability for cross-examination obviates the the concerns implicated by admitting hearsay testimony. The jury is able to assess the declarant's credibility. *Id.; Commonwealth v. Fanelli*, 377 Pa.Super. 555, 547 A.2d 1201 (1988).

We find that the rule allowing prior statements of a witness into trial as substantive evidence when the declarant testifies is inconsistent with our Supreme Court's holding in *Commonwealth v. Hutchinson, supra.* As quoted above, the Supreme Court held that prior consistent statements can only be used for rehabilitative purposes when a witness's testimony has been challenged as recently fabricated. Indeed, in *Hutchinson*, the hearsay declarant did testify at trial, yet the Court held that since his testimony had not been impeached as recently fabricated, his prior statement did not fall within the prior consistent statement exception.

Moreover, allowing prior statements into evidence merely because the declarant is available at trial obviates the need for a consistent statement exception to the hearsay rule, since any statements by a declarant who testifies at trial would be admitted automatically. *Smith*, 402 Pa.Super. at 270, 586 A.2d at 964 n. 2. Furthermore, as Judge Cavanaugh cogently stated in *Fanelli:*

The gist of [a] hearsay objection is repetition on the witness stand on [sic] an out of court assertion. It is not dependent on the identity of the witness or the fact that the declarant may be available. Thus even if a witness testifies to an assertion previously made by him and the assertion is offered to prove the truth of the matter asserted therein, then it is hearsay. See McCormick [on Evidence § 251 (3d ed. 1984) ].

*Fanelli*, 377 Pa.Super. at 572, 547 A.2d at 1210 (Cavanaugh, J., dissenting).

We believe that this view is more consistent with the Supreme Court's proclamation that prior consistent statements can only be offered in rebuttal. Insofar as *Rakes* and *Fanelli* stand for the proposition that prior consistent statements may be admitted as substantive evidence when the declarant testifies at trial, we will not consider them authoritative in light of *Commonwealth v. Hutchinson, supra.*

Based on the the foregoing reasoning, we hold that the trial judge erred in admitting the videotape of R.P. and the audiotape of M.P. as substantive evidence. We acknowledge, however, that the statements could have been admitted for the purpose of rehabilitating the girls' testimony. The record does indicate that defense counsel questioned their ability to remember the incidents of alleged abuse, and suggested that the district attorney had "practiced" with them in order to relate an accurate story. (N.T. 1/7/91, pp. 47–48.) The tapes were admitted for their truth, however, and this was improper.

We do note that our adherence to the rule espoused above does not preclude admission of such videotaped and audiotaped interviews altogether. The Pennsylvania Legislature has adopted a statute which permits out-of-court statements made by children under twelve years of age which describe allegations of indecent conduct. 42 Pa.C.S.A. § 5985.1 (Purdon Supp.1992). The statute requires a finding of reliability by the trial court, and the child witness must either be available to testify, or unavailable and independent evidence

corroborates the statement. *Id.; see Commonwealth v. Smith, supra.*

Although the statute was not considered by the trial judge or the Commonwealth in this case, we note that its use would be a much more accurate vehicle for admitting the tapes in this case into evidence. The trial judge's rationale precluded him (as factfinder) from reviewing the tapes as a whole. He considered only the answers to questions posed by the examiners. We feel that this method of allowing the evidence ignores the reality of viewing a videotaped interview, and listening to an audiotaped interview. In order to accurately assess the credibility of the testimony on tape, the viewer must be able to view the tape contextually, rather than ignoring half and paying attention to half. This would be especially confusing to a jury.

The statute, on the other hand, would arguably allow the Commonwealth to offer the tapes in their entirety as substantive evidence after the court found that they were reliable. The factfinder may then believe, or not believe, any part of the tapes he desires.

In sum, then, we hold that the audiotapes and videotapes were improperly admitted into the trial as substantive evidence of prior consistent statements of the witnesses. Although the tapes could have been offered as rehabilitating evidence or as substantive evidence under Pennsylvania's new hearsay statute, the trial court's decision was error.

Although we find that the admission of the audiotapes and videotapes was improper under the conventional rules of evidence, we find that their admission was harmless error. An error is harmless if the appellate court reviewing the record believes it was harmless beyond a reasonable doubt. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978). Moreover, "an error which, viewed by itself, is not minimal, may nonetheless be harmless if properly admitted evidence is substantially similar to the erroneously admitted evidence." *Id.* at 411, 383 A.2d at 165. In other words, if "the erroneously admitted testimony was merely cumulative of

other untainted evidence," its admission is harmless error. *Id.; Commonwealth v. Knight,* 469 Pa. 57, 364 A.2d 902 (1976); *Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973).

After thoroughly reviewing the record, we conclude that the testimony given by the child victims at trial was substantially similar to that contained in the transcripts of their videotaped and audiotaped interviews. In fact, both the trial transcripts and transcripts of the interviews contain nearly identical accounts of the alleged molestation. Thus, the admission of the audiotapes and videotapes provide no more substantive information than does the testimony in court. Since the admission of the tapes was repetitious and duplicitous, we are convinced beyond a reasonable doubt that the error was harmless.

III. Ineffective Assistance of Counsel.

Polston also contends that he was denied effective counsel. He argues no less than eight separate points of contention. We find that trial counsel was effective and affirm the judgment of sentence.

The standard by which we view a claim of ineffectiveness is well settled.

Claims of ineffectiveness are subject to a three part analysis. First, it must be demonstrated that the underlying claim is of arguable merit. Next, it must be determined whether counsel's choice of action had some reasonable basis designed to effectuate his or her client's interests. Finally, a showing must be made of how counsel's choice of action prejudiced the client. The law presumes that counsel was effective, so the burden of establishing ineffectiveness rests squarely upon the defendant. Moreover, counsel will not be deemed effective for failing to assert a baseless claim.

*Commonwealth v. Lebo,* 405 Pa.Super. 316, 592 A.2d 353 (1991) (citations omitted).

■ It is incumbent upon us to review the record in light of appellant's theory of the case, and determine whether the attorney's decisions were reasonably designed to benefit the

client. Indeed, hindsight is not an effective measure of reason and we cannot determine counsel ineffective merely because he could have chosen a different course of action. *Commonwealth v. Chester,* 526 Pa. 578, 587 A.2d 1367 (1991), *cert. denied, sub. nom., Laird v. Pennsylvania,* —— U.S. ——, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). Appellant must prove that he was "prejudiced" by the attorney's decisions. "Prejudice" can be described as whether, but for the arguably ineffective act or omission, there is a reasonable probability that the outcome would have been different. *Commonwealth v. Lott,* 398 Pa.Super. 573, 581 A.2d 612 (1990), *allocatur denied,* 527 Pa. 663, 593 A.2d 839 (1991).

A perusal of the trial testimony here indicates that counsel attempted to establish, through the cross-examination of Commonwealth witnesses, that Polston and his wife were estranged, and that the testimony was either fabricated or biased in favor of her. Polston's defense was that the events had not occurred, the witnesses were not credible, the testimony was biased, and therefore, he asserted, the Commonwealth failed to bear its burden. We believe that this strategy was reasonable. We will now turn to each of Polston's claims to determine if counsel's particular decisions were reasonably calculated to serve his client's best interests.

Polston's first and second arguments may be addressed together. He claims that counsel was ineffective for stipulating to the childrens' competency to testify and also for failing to object to certain leading questions asked by the Commonwealth's attorney to the children during direct examination. Both contentions are wholly without merit, and thus it was not ineffective for counsel to fail to object.

■ A child witness is competent to testify if she has: (1) the capacity to communicate, including the ability to understand questions and express intelligent answers; (2) the mental capacity to observe the event itself and the capacity of remembering what it is that she is called to testify about; and (3) a consciousness of the duty to speak the truth. *Rosche v. McCoy,* 397 Pa. 615, 156 A.2d 307 (1959); *Commonwealth v.*

*McEachin,* 371 Pa.Super. 188, 537 A.2d 883 (1988), *allocatur denied,* 520 Pa. 603, 553 A.2d 965 (1988).

The record amply supports the conclusion that both M.P. and R.P. were competent to testify. For example, the following exchange took place between the Commonwealth's attorney and M.P., who was nine years old at the time:

Q: Now, [M.P.], you put your hand on the Bible and told everybody you were going to tell the truth right?

A: Yes.

Q: And you knew that God was in the Bible?

A: Yes.

Q: Does God want you tell the truth or does God want you to lie?

\* \* \* \* \* \*

A: The truth.

Q: Okay. How about the judge?

A: The truth.

Q: Now, how about your mom? Does she want to tell a lie or does she want you to tell the truth?

A: The truth.

Q: Do you know why you're here?

A: Yes,

Q: Why?

A: Because daddy did something to us.

Q: I'm going to ask you some questions about that. Do you promise to tell the truth?

A: Yes.

(N.T. 1/7/91 pp. 13–14.)

M.P. gave succinct answers to questions posed to her. She clearly understood what it meant to tell the truth and was straightforward during both direct and cross examination.

Given the wide discretion that is accorded a judge to determine competency of witnesses, and the fact that the record indicates that both child witnesses were responsive and intelligent, a challenge to their competency would have been frivolous. *See Commonwealth v. Bristow,* 372 Pa.Super. 48,

538 A.2d 1343 (1988), *allocatur denied,* 520 Pa. 595, 552 A.2d 249 (1988).

Polston also argues that his counsel was ineffective in failing to object to certain leading questions asked of the children. This assertion is simply incorrect. Counsel objected to leading questions on numerous occasions. These objections were overruled by the trial judge. The trial judge has wide discretion in controlling the use of leading questions at trial. *Commonwealth v. Bell,* 328 Pa.Super. 35, 476 A.2d 439 (1984). Moreover, children are easily intimidated by the courtroom setting, and a trial judge should display a certain tolerance for direct, succinct, and even leading questions. *See, Commonwealth v. Willis,* 380 Pa.Super. 555, 552 A.2d 682 n. 3 (1988), *allocatur denied,* 522 Pa. 583, 559 A.2d 527 (1989) (children should be asked direct rather than convoluted or compound questions during examination). Thus, it was not unreasonable for counsel to avoid repetitious objections, knowing that the trial judge was allowing the Commonwealth's attorney latitude.

Polston's third contention is that counsel was ineffective for failing to move to strike M.P.'s testimony when she stated that her mother helped her remember parts of her testimony. This contention is meritless. Polston's theory of the case was that the children were not credible. After eliciting M.P.'s statement, counsel was reasonable in leaving the subject matter altogether. If the factfinder was to believe the witness when she said that she did not remember certain parts of her testimony, he could disregard it. Furthermore, merely because a witness's memory is refreshed does not render her testimony irrelevant. Counsel merely wished to discredit the credibility of the witness, which he did.

Polston's fourth contention is that counsel was ineffective when he elicited testimony from R.P. that she was in pain during the alleged sexual assault. Polston contends that if counsel had not elicited this testimony, he could not have been convicted of simple assault. This argument is meritless.

First, simple assault was the fifteenth count of a twenty-six count criminal complaint against Polston, which contained the more serious charges of rape, involuntary sexual deviate intercourse, incest and statutory rape. Counsel's purpose in eliciting this information from the witness was, as the trial court found, to discredit the testimony of the witness by proving that if the alleged attacks did cause the victim pain, the cause would have been reported sooner. If counsel's strategy would have led to an acquittal on the more serious charges, Polston would hardly claim ineffectiveness because counsel backed Polston into a simple assault conviction.

■ Furthermore, it is axiomatic that simple assault does not require a victim to suffer actual bodily injury. *Interest of J.L.*, 327 Pa.Super. 175, 475 A.2d 156 (1984). The attempt to inflict bodily injury may be sufficient. *Id.* This intent may be inferred from the circumstances surrounding the incident if a specific intent to cause bodily injury may reasonably be inferred therefrom. *See Commonwealth v. Moore*, 261 Pa.Super. 92, 395 A.2d 1328 (1978). The trial court found that the direct testimony of the Commonwealth witnesses provided sufficient evidence to find Polston guilty beyond a reasonable doubt. The record is replete with testimony that would support such a finding. Moreover, we find it hard to believe that the court found Polston guilty of assault based solely on the testimony of the victim who said the alleged molestation "hurt." We find that counsel's questions to the witness were entirely reasonable.

■ Polston contends next that counsel was ineffective in failing to object to certain hearsay evidence during the direct testimony of the Polstons' neighbor. The neighbor, Mary Cleveland, testified to hearing statements uttered by the children to the effect of "no daddy, don't," as she was in the house babysitting one evening. After hearing these words, she investigated, and found R.P. crying in her bedroom. (N.T. 1/7/91, pp. 125–126.)

Counsel for Polston testified at a post-trial hearing [4] that he and Polston discussed this testimony and decided not to object. The reason for this bypass was to allow Cleveland to testify, then explore the possibility on cross that the entire story was a fabrication. In light of Cleveland's testimony, this bypass was reasonable.

Cleveland's testimony, when read as a whole, is not damaging to Polston's case. Cleveland only testified that after hearing the words, she saw R.P. crying and consoled her. The testimony does not necessarily allow an inference that sexual conduct had just occurred. Therefore, it was reasonable for counsel to allow Cleveland to testify, knowing that the overall effect of the testimony would be of little or no help to the Commonwealth. Counsel then attacked her story's credibility on cross. Counsel's omission was not unreasonable.

Polston's sixth claim is that counsel was ineffective for failing to admit evidence of Polston's good character during his case. Polston claims that several witnesses were available and ready to testify on his behalf. Furthermore, he states that "[g]enerally, character testimony alone is sufficient to cast a reasonable doubt upon which a tried [sic] of fact can base an acquittal." (Polston's brief, p. 25.)

While we do not disagree with the proposition that charac-. ter evidence is many times helpful to a defendant in a criminal trial, Polston provides us with no indication of how it would help in this case. Without this, we cannot claim that counsel was ineffective. *Commonwealth v. Iverson,* 358 Pa.Super. 1, 516 A.2d 738 (1986). Counsel testified at the hearing on the ineffectiveness claim that he interviewed a number of potential witnesses and decided not to introduce them as witnesses. Also, the record indicates that Polston had a prior criminal record. *See* Polston's omnibus pre-trial motion, paragraphs 1–

---

4. A post-trial hearing on Polston's trial counsel's effectiveness was held on November 26, 1991. Counsel testified at that hearing. A transcript of the proceeding, however, was not made a part of the reproduced record on appeal. We therefore glean counsel's pertinent testimony from the trial court opinion and order dated January 17, 1992.

4. Thus, we find that counsel was reasonable in his decision to not bring Polston's character into issue.

Polston also argues that counsel was ineffective in not allowing Polston to testify on his own behalf. Again, we do not agree that counsel was ineffective. Counsel testified that he and Polston discussed the ramifications of Polston testifying, and that Polston chose to invoke his right to remain silent. There is nothing in the record to indicate that Polston did not make his own decision. We are not presented with any reason that would persuade us that the outcome of the trial would have been any different had Polston testified. We conclude that counsel was not unreasonable in advising Polston in the way that he did, and that Polston voluntarily chose to remain silent.

Finally, Polston claims that counsel was ineffective for not objecting to the introduction of the videotape evidence on constitutional grounds. Polston claims he was denied his Sixth Amendment right to confront witnesses because the tapes were taken outside of his presence. We hold that although his claim may have arguable merit, counsel's failure to object on constitutional grounds did not prejudice Polston in any way.

The Confrontation Clause, as it applies to testimony given outside of the presence of the defendant in a child sexual abuse case, has been considered thoroughly by our appellate courts in recent years. In *Commonwealth v. Ludwig*, 366 Pa.Super. 361, 531 A.2d 459 (1988), *rev'd* 527 Pa. 472, 594 A.2d 281 (1991), this Court found that a defendant's right to confront witnesses was not violated when the child victim of alleged sexual molestation was permitted to testify through the use of closed circuit television. In doing so, a majority of this Court balanced the interests in protecting the child witness with the interests protected by the Confrontation Clause. The interests protected by the clause were: (1) to insure that the witness would testify under oath subject to a penalty for perjury; (2) to force the witness to subject herself to cross-

examination; and (3) to permit the jury to observe the witness while testifying. *Id.* 366 Pa.Super. at 364, 531 A.2d at 460.[5]

We note that under this test, only two of the three prongs are met. Indeed, the girls were cross-examined at trial concerning their statements in the interviews. Also, the trial judge, by listening to the audiotape and watching the video-tape could accurately assess the credibility of the child wit-nesses. However, the children did not make their statements in a situation that emulated the seriousness of the courtroom atmosphere. Indeed, the statements were made in a police station to a police officer and a counselor who frequently worked with the police. The statements, moreover, were made pre-arrest. Whether the availability of the children at trial would suffice to cure the obvious infirmity is a close question.

For purposes of our analysis, however, we need only to determine whether an objection on these ground has arguable merit. We feel that such a claim does have merit based on the reasoning above. We cannot conclude, however, that even assuming counsel had no tactical reason to bypass an objec-tion, Polston was prejudiced.

As we noted, "prejudice" asks us to determine whether there is a possibility that if counsel would have pursued the route he is accused of ineffectively avoiding, the outcome of the trial would have been different. We hold that there is no

5. *Ludwig* was reversed by the Pennsylvania Supreme Court. *Common-wealth v. Ludwig*, 527 Pa. 472, 594 A.2d 281 (1991). The basis for the reversal lay in the Supreme Court's finding that Pennsylvania's Consti-tution provides more protection than the Federal Constitution under the analogous Confrontation Clause provision. *Id.* at 478, 594 A.2d at 284. The Court held that without a specific showing that there is a special need to isolate a child witness, the protection of the Confronta-tion Clause should not give way. *Id.* at 480, 594 A.2d at 285.

The Supreme Court's opinion was released three months after Pol-ston's trial, however, and was not on the books at the time of counsel's alleged ineffectiveness. Knowledge of this case certainly would have made an objection in Polston's case to the admission of the tapes even more meritorious. But, since an attorney may not be deemed ineffec-tive for failing to predict a change in the law, we will not consider that change here. *See Commonwealth v. Franklin*, 397 Pa.Super. 265, 580 A.2d 25 (1990).

such possibility. First, as we noted above, the admission of the videotapes and audiotapes was merely cumulative of the evidence already produced at trial through the testimony of M.P. and R.P. Indeed, we held above that its admission was harmless beyond a reasonable doubt. The crux of the harmless error finding is our belief that even if the tapes had been excluded from trial, the outcome would have been the same. The same reasoning applies here. Since the children's live testimony at trial is substantially similar to that on the tapes, the tapes added nothing to the Commonwealth's case. The outcome of the case would have been the same. Polston was not prejudiced by counsel's failure to object to the admission of the tapes on Constitutional grounds. Counsel was not, therefore, ineffective.

Judgment of sentence affirmed.

CAVANAUGH, J., concurs in the result.