J-S62024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM EDWARD SHAW | : | |
| | : | |
| Appellant | : | No. 993 EDA 2018 |

Appeal from the Judgment of Sentence Entered October 5, 2016
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0001461-2016

BEFORE: LAZARUS, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.: **FILED JANUARY 07, 2019**

William Edward Shaw appeals from the judgment of sentence entered on October 5, 2016, after a jury convicted him of simple assault, endangering the welfare of a child ("EWOC"), and harassment.[1] Shaw challenges the sufficiency and weight of the evidence. We affirm.

The trial court aptly summarized the facts of the case as follows:

> D.S. and B.S. are twin sisters and daughters of [Shaw]. At the time of the incident in question, the sisters were 11 years old. D.S. and B.S. testified that [Shaw] lived in an RV the distance of 'football field' away from their mother's trailer, while Detective Catherine Coffman stated during testimony that she did not 'even think it's that far in distance.' D.S visited [Shaw] 'frequently' after [Shaw] moved out of the juveniles' mother's home, while B.S. also testified to visiting her father at his RV between his move and the incident in question. D.S. identified a bed in [Shaw's] RV as hers and noted that she slept at the RV on multiple occasions, and B.S. testified that she kept "sleepover clothes" at [Shaw's] RV and

---

[1] 18 Pa.C.S.A. §§ 2701(a)(1), 4304, and 2709(a)(1), respectively.

affirmed that she slept over at the RV prior to the incident in question.

On August 15, 2015, D.S. and B.S. walked from their mother's home to [Shaw's] RV, to play with kittens [Shaw] was keeping in the RV. D.S. and B.S. were seated on [Shaw's] bed playing with the kittens while [Shaw] was sitting at the end of the bed. During the visit, B.S. expressed an interest in taking the kittens to her mother's home. [Shaw] refused and indicated his intention to take the kittens to the Women's Humane Society. A verbal argument ensued between [Shaw] and his daughters, during which [Shaw] grabbed D.S. by the neck, placing the fingers and thumb of one hand around D.S.'s neck and applying pressure. D.S. stated during trial that the pressure placed by [Shaw] on her neck made breathing difficult. D.S. also testified that as [Shaw] grabbed her neck, [Shaw] told her to "get ready to die." B.S. then jumped on [Shaw's] back, biting, kicking, and pinching [Shaw] in order to prevent him from choking D.S. Following this action, [Shaw] released D.S. and pushed both D.S. and B.S. out of the RV.

[Shaw] thereafter emerged from the RV with the kittens in a carrying case. [Shaw] carried the case to his truck and placed the case in the back. D.S. testified that [when] she attempted to retrieve the case from the vehicle, [Shaw] threw D.S. onto the hitch of the RV, while B.S. stated during trial that [Shaw] grabbed D.S. by the shirt at this point. D.S. then took the case from the vehicle, but [Shaw] knocked the case out of her hands, causing the case to fall open and allowing the cats to escape. D.S. found both cats, and she and B.S. ran to their mother's home with the cats. D.S. and B.S. informed their mother of what had happened, at which point their mother contacted the police.

Officer David Gold of the Falls Township Police Department arrived at the home of B.S. and D.S.'s mother to respond to the call she had made to police. Officer Gold noted that the left side of D.S.'s neck showed red markings parallel to one another, each approximately the thickness of a finger. The officer further observed an abrasion on D.S.'s right arm about the length and thickness of a permanent marker, as well as general redness on her arm. During trial, the officer also testified that he saw a round abrasion about the size of a grapefruit on D.S.'s right thigh, as well as a "sharp pea-sized abrasion" on D.S.'s left arm.

Detective Coffman also testified at trial concerning her involvement in this case. As part of her investigation, Detective Coffman took pictures of D.S.'s injuries. These photographs displayed red marks on D.S's neck, a three-to four-inch red mark on her right arm, an injury approximately an inch and a half long on her left arm, and some redness and topical abrasion on D.S.'s back.

Trial Court Opinion ("TCO"), filed April 25, 2018, at 1-2 (citations to notes of testimony omitted).

On October 5, 2016, the jury found Shaw guilty of the above-referenced crimes and the trial court sentenced him to one to three years in prison followed by two years of reporting probation. In March 2018, the trial court reinstated Shaw's direct appeal rights *nunc pro tunc* and this timely appeal followed.

On appeal, Shaw asks this Court to review the following:

I. Was there insufficient evidence to convict [Shaw] of simple assault, where, including, but not limited to, the jury rejecting the majority of the Commonwealth's case on the nine most serious counts, Commonwealth's evidence was inconsistent, insufficient *mens rea* evidence, and insufficient evidence of injury?

II. Was there insufficient evidence of endangering the welfare of a child, where, including but not limited to, the jury rejecting the majority of the Commonwealth's case on the nine most serious counts, Commonwealth's evidence was inconsistent and constitutionally unreliable, insufficient *mens rea* evidence, insufficient evidence of injury, and insufficient evidence of how [Shaw] violated any duty of care?

III. Was the verdict against the weight of the evidence on the charge of simple assault, where the Commonwealth relied on inconsistent, constitutionally unreliable evidence, the jury rejected the majority of the Commonwealth's case based upon the same witnesses found incredible on the nine

> most serious charges, and the defense evidence negated and outweighed the Commonwealth's evidence?
>
> IV. Was the verdict against the weight of the evidence on the charge of endangering the welfare of children, where the Commonwealth relied on inconsistent, constitutionally unreliable evidence, the jury rejected the majority of the Commonwealth's case based upon the same witnesses deemed insufficient on the nine most serious charges, and the defense evidence negated and outweighed the Commonwealth's evidence?

Shaw's Br. at 4-5 (answers of trial court omitted).

We only address Shaw's claims challenging the sufficiency of the evidence because he waived any challenge to the weight of the evidence. In order to preserve a challenge to the weight of the evidence, a defendant must make a motion before the trial court, which Shaw failed to do. *See* Pa.R.Crim.P. 607(A).[2] While the trial court's Pa.R.A.P. 1925(a) opinion addresses the merits of his challenge to the weight of the evidence, the claim is still waived. *See Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009) (stating trial court's addressing weight claim in Rule 1925(a) opinion does not preserve a weight claim where defendant did not make a motion raising issue with the trial court pursuant to Pa.R.Crim.P. 607(A)). Therefore, because Shaw did not properly raise and preserve his weight claim, it is waived and we will not review it.

---

[2] A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion. Pa.R.Crim.P. 607(A).

Shaw's remaining issues challenge the sufficiency of the evidence regarding his convictions for simple assault and EWOC. When reviewing a challenge to the sufficiency of the evidence, we ask "whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Brown*, 23 A.3d 544, 559 (Pa.Super. 2011) (e*n banc*) (citation omitted). Our standard of review is *de novo* and our scope of review is plenary. *See Commonwealth v. Neysmith*, 192 A.3d 184, 189 (Pa.Super. 2018).

## SIMPLE ASSAULT SUFFICIENCY

We first address the sufficiency of the simple assault conviction. The Commonwealth must prove beyond a reasonable doubt that the defendant "attempt[ed] to cause or intentionally, knowingly or recklessly cause[d] bodily injury to another." 18 Pa.C.S.A. § 2701(a)(1). Bodily injury is the "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301. "[I]ntent may be inferred from the circumstances surrounding the incident if a specific intent to cause bodily injury may reasonably be inferred therefrom." *Commonwealth v. Polston*, 616 A.2d 669, 679 (Pa.Super. 1992).

Here, Shaw maintains that "[his] conviction [for simple assault] was not supported by sufficient evidence" for four reasons. Shaw's Br. at 14. We address each argument separately.

First, he maintains that "because the unreliability of the complainant [sic] witnesses were substantially rejected by the jury on the most serious

counts," this shows that his conviction was not supported by sufficient evidence. *Id.* To begin, Shaw cites no authority to support his argument regarding this claim and therefore it is waived for purposes of appellate review. *See* Pa.R.A.P. 2119(a).[3] However, even if Shaw had properly preserved this claim, we would conclude it lacks merit. "[C]onsistency in verdicts between counts" is not necessary and therefore as long as there is "sufficient evidence to support convictions which the jury has returned," there is no need to reverse the judgment of sentence. *Commonwealth v. Bricker*, 580 A.2d 388, 389 (Pa.Super. 1990). The facts viewed in the most favorable light to the Commonwealth established that Shaw, the father of D.S. and B.S., applied enough pressure to D.S.'s neck with his hands that it left marks on her neck. The pressure was also so severe that she had difficulty breathing. Shaw then told his daughter to get ready to die. Additionally, when D.S. attempted to retrieve the kittens from Shaw's vehicle, he threw her onto the hitch of another vehicle. These facts were amply sufficient to satisfy the charge of simple assault and therefore no relief is due.

_____

[3] The Pennsylvania Rules of Appellate Procedure provide:

> The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part – in distinctive type or in type distinctively displayed – the particular point treated therein, followed by such discussion and *citation of authorities* as are deemed pertinent.

Pa.R.A.P. 2119(a) (emphasis added).

Second, Shaw maintains "the claims of physical harm are inconsistent with the forensic evidence." Shaw's Br. at 14. He claims that D.S.'s testimony in court was directly inconsistent with her videotaped statement. At trial she testified that Shaw applied pressure to her neck with one hand but in her video statement she claimed he used two hands. Shaw maintains that "[t]his comparison is crucial because there is no forensic or in court live evidence about two hands, so this is a direct inconsistency." *Id.* at 17. While inconsistent, the jury believed D.S.'s testimony regarding Shaw using his hand to restrict her breathing, which it was free to do. **See Commonwealth v. Boxley**, 838 A.2d 608, 612 (Pa. 2003) (stating fact finder is free to believe all, part or none of the evidence presented to it). Additionally, whatever inconsistency there may have been between D.S.'s testimony and the forensic evidence is an issue of weight, not sufficiency. *Id.* (stating a challenge to the inconsistency of evidence is a proper question of weight not sufficiency). This claim is meritless and no relief is due.

Third, Shaw argues that "the Commonwealth failed to establish the requisite *mens rea*." Shaw's Br. at 14. He maintains that "[t]here is no competent, credible evidence of any criminal malicious intent nor the proof of substantial pain, never mind extreme pain." *Id.* at 18. We disagree. The evidence considered in the light most favorable to the Commonwealth as verdict-winner established that Shaw placed enough pressure around D.S.'s neck for a period of time to partially impair her ability to breathe. The jury reasonably inferred that he did so at least recklessly. In addition, while he

applied that pressure to D.S.'s neck, he told her to get ready to die. The record supports a finding that Shaw intended to cause bodily injury to his daughter. As trial court stated:

> The circumstances of this incident clearly suggest an intent by [Shaw] to cause injury to D.S., as no reasonable adult male could suppose that placing pressure on the neck of an 11-year-old girl, or throwing the same juvenile against an RV hitch, would not result in injury.

TCO at 6.

Finally, Shaw argues that the Commonwealth failed to carry its burden under Section 509 of the Crimes Code, which relates to the use of force by a person with special responsibility to care for another including parents.[4] **See** Shaw's Br. at 13. He maintains that the Commonwealth "must prove that the

---

[4] Section 509 reads:

> The use of force upon or toward the person of another is justifiable if:
>
> (1) The actor is the parent or other person similarly responsible for the general care and supervision of a minor or a person acting at the request of such parent, guardian or other responsible person and:
>
> > a. The force is used for the purpose of safeguarding or promoting the welfare of the minor, including the preventing or punishment of his misconduct
> >
> > b. The force used is not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation.

18 Pa.C.S.A. § 509(1)

force was designed to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or degradation." *Id.* However, this claim of a justification defense pursuant to Section 509 is waived because Shaw failed to raise it with the trial court. *See Commonwealth v. Bradley*, 69 A.3d 253, 256 (Pa.Super. 2013) (where Section 509 claim "was not raised before the trial court in any manner," including the 1925(b) statement, claim is waived); *see also Commonwealth v. Ogin*, 540 A.2d 549, 554 (Pa.Super. 1988) (*en banc*) (reviewing denial of request for justification defense instruction by defendant where issue was preserved by raising it with trial court). Here, Shaw did not request a justification defense instruction to the jury and in fact argued to the jury that his daughters were lying about the assault. *See* N.T., Closing Argument, 10/5/16, at 5-27. As such we do not address this claim. *See* Pa.R.A.P. 302(a) (claims not raised with trial court may not be raised for the first time on appeal).

**EWOC SUFFICIENCY**

Next, we address the sufficiency of the evidence for Shaw's EWOC conviction. The Pennsylvania Crimes Code defines EWOC as:

> A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

18 Pa.C.S.A. § 4304(a)(1).

Shaw maintains that evidence was insufficient because there was no physical evidence to corroborate D.S.'s testimony regarding "double-handed choking" or "being thrown against the tongue of a trailer." Shaw's Br. at 20. Due to the alleged inconsistency between D.S.'s injuries and her testimony, Shaw claims the evidence "at best is so unreliable and uncontradictory [sic] that it violates the **Bennett** Principle[5] and is, therefore, clearly legally insufficient." **Id.** at 21. Shaw also claims that the evidence was insufficient because of the "heightened [Section] 509 protections recognizing the leniency that must be given to parents." **Id.** at 21. However, as discussed previously, his Section 509 claim is waived because he failed to raise it with the trial court. **See Bradley**, 69 A.3d at 256. Additionally, Shaw's issue regarding D.S.'s inconsistent testimony and her injuries goes to the weight and not the sufficiency of the evidence which he did not preserve for appellate review. **See** Pa.R.Crim.P. 607(A). Even if Shaw had properly presented a sufficiency challenge to this Court, we would conclude it lacks merit.

In order to sustain a conviction for EWOC, the Commonwealth must prove beyond a reasonable doubt that: "(1) the accused [was] aware of his or her duty to protect the child; (2) the accused [was] 'aware that the child [was] in circumstances that could threaten the child's physical or psychological

---

[5] **Commonwealth v. Bennett**, 303 A.2d 220, 221 (Pa.Super. 1973) (*en banc*) (stating "a case should not go to the jury where the party having the burden offers testimony of a witness, or of various witnesses, which is so contradictory on the essential issues that any finding by the jury would be a mere guess").

welfare'; and (3) the accused either failed to act, or [take] 'action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.'" ***Commonwealth v. Smith***, 956 A.2d 1029, 1038 (Pa.Super. 2008) (*en banc*) (citation omitted).

We only address the last two factors because Shaw does not deny that he owed a duty to his daughters in his role as their father. ***See generally*** Shaw's Br. at 19-21. Viewing the evidence in the light most favorable to Commonwealth, Shaw knew he was placing D.S. in a life-threatening circumstance when he applied enough pressure to her neck to cause difficulty in her breathing and told her to get ready to die. Additionally, the action of choking his daughter could not reasonably be expected to protect her welfare. This altercation between Shaw and D.S. only subsided when his other daughter, B.S., jumped on his back and began to bite, kick, and pinch him until he released the grip he had around D.S.'s neck. These facts were amply sufficient to satisfy the charge of EWOC and therefore no relief is due. Moreover, D.S.'s testimony was not "so contradictory on the basic issues as to make any verdict thereon pure conjecture," in regards to Shaw's suggestion that the ***Bennett*** principle applies to this case. ***Bennett***, 303 A.2d at 221. D.S.'s inconsistent testimony regarding how many hands Shaw used to choke her does not negate the evidence that she was in fact choked. This claim is meritless and we therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/7/19