# COMMONWEALTH of Pennsylvania, Appellee,

## v.

# Christopher Scott CURLEY, Appellant.

Superior Court of Pennsylvania.

Argued May 17, 2006.

Filed Oct. 5, 2006.

Reargument Denied Dec. 11, 2006.

---

4. The majority's explication of *Lesko, i.e.,* that it stands for the proposition that a defendant cannot claim a Fifth Amendment privilege at the penalty phase relative to matters related to credibility or the subject matter of his testimony, *see* Majority Opinion, *slip op.* at 23, is certainly correct as far as it goes. But the majority does not recognize the salient point for which Appellant references *Lesko,* namely, that the circumstances of the offense charged does not bear a sufficient relationship to credibility or life-history-type mitigation testimony to support a waiver. *See Lesko,* 925 F.2d at 1543 ("We do not believe that Lesko's limited testimony constitutes a waiver of his right ... to be free from prosecutorial comment about his failure to testify about the merits of the prosecution's case.").

5. Indeed, trial counsel's post-conviction testimony indicated that Appellant was substantially uncooperative as concerned the development of mitigation evidence for the penalty phase of trial.

Burton A. Rose, Philadelphia, for appellant.

Kevin J. McCloskey, Asst. Dist. Atty., Norristown, for Com., appellee.

BEFORE: JOYCE, LALLY–GREEN, JJ., and McEWEN, P.J.E.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Christopher Scott Curley, appeals from the trial court's April 22, 2005 judgment of sentence. We affirm.

¶ 2 The trial court recited the procedural history and found the following facts:

Defendant, Christopher Scott Curley, has appealed to the Superior Court of Pennsylvania from the judgment of sentence imposed upon him on April 22, 2005, following his conviction for rape and related offenses committed against A.L., his six-year-old stepdaughter. Defendant was further convicted of criminal attempt to commit involuntary deviate sexual intercourse and indecent assault upon C.R., the twelve-year-old daughter of a family friend, and of criminal solicitation of C.R. with the intention of promoting or facilitating involuntary deviate sexual intercourse and indecent assault.

. . .

On February 27, 2003, C.R., who was then twelve years old, requested a meeting with her school guidance counselor, Tracy Lee James, and reported to Ms. James that she had been sexually assaulted by defendant on February 14, 2003, during a sleepover with A.L., de-

fendant's six-year-old stepdaughter, at defendant's residence. C.R. reported to Ms. James that she had been awakened during the night by defendant pulling her out from beneath the covers, pulling off her pajamas, and putting "his thing in between her legs."

Ms. James further testified that C.R. also told her of an incident that had occurred at defendant's residence on February 26, 2003, the previous day. Specifically, Ms. James reported that C.R. told her that she had been at defendant's home for a play date with A.L., and that defendant and A.L. had shown her a "game" during which A.L. "put her mouth over defendant's penis."

C.R. testified in detail concerning the February 26, 2003 incident at defendant's trial. C.R. testified that she and A.L. were playing with dolls on a couch in defendant's basement when defendant joined them. Defendant asked A.L. if she wanted "to show [C.R.] something." A.L. agreed, and the three sat together on the couch, with C.R. sitting on defendant's left knee with his arm around her waist and with A.L. kneeling in front of him. At defendant's direction, A.L. put her hand over C.R.'s eyes. When A.L. removed her hand, C.R. saw that A.L. was sucking on and masturbating defendant's exposed penis. With his arm still around her waist, defendant asked C.R. to "try it," but C.R. refused and went upstairs to the bathroom to get away from defendant.

C.R. testified that, at school the following day, she confided to a friend what had happened.[6]

6. The friend, M.J., confirmed the substance of this conversation in testimony at defendant's trial.

When the friend told her that she had to tell an adult, C.R. requested a meeting with Ms. James.

After listening to C.R.'s account of what had happened, Ms. James contacted C.R.'s mother and the police.

Trooper James J. McFadden, a criminal investigator with the Pennsylvania State Police, testified that he was assigned to investigate C.R.'s allegation against defendant, and that he met with C.R. and her mother on February 27, 2003, the date C.R. reported defendant's activities to Ms. James, memorializing his interview of C.R. in writing.

Elisabeth Siegfried of the Montgomery County Office of Children and Youth testified that, as a result of C.R.'s allegations, an investigation was initiated in regard to the welfare of A.L. Ms. Siegfried testified that, on February 28, 2003, she met with A.L. in the presence of A.L.'s mother and State Trooper Colleen Young at the Pottstown office of Children and Youth. During the course of this interview, A.L. told Ms. Siegfried about a "game" she played with defendant in the basement of defendant's residence while her mother was at work. A.L. refused to provide Ms. Siegfried with details of this game, reporting only that it was "secret" and "nasty."

Ms. Siegfried testified that, following her interview with A.L., and upon review of the report of a clinical sociologist who subsequently interviewed A.L., she filed a report on April 22, 2003 to the effect that, with A.L. unwilling to talk further about the "game," she was unable to substantiate that A.L. had suffered sexual abuse as of that date. Meanwhile, criminal charges were brought against defendant for his alleged actions against C.R. Ms. Siegfried testified that Children and Youth's investigation of the possible sexual abuse of A.L. was reopened following defendant's May 8, 2003 preliminary hearing on those charges and that, as a

result of the renewed investigation, her office ultimately took custody of A.L. pursuant to an order of the Honorable S. Gerald Corso, President Judge of this court.

Wendy Demchick–Alloy, Esquire, testified that she was the prosecuting attorney at defendant's preliminary hearing on the charges brought against him for his actions involving C.R. Ms. Demchick–Alloy testified at defendant's trial that, following the preliminary hearing—during which C.R. testified to defendant's actions against A.L.—she met with A.L. at A.L.'s foster home on May 23, 2003, in the company of Richard Simon, Esquire, A.L.'s Child Advocate, and A.L.'s foster mother. During the initial stages of this meeting, Ms. Demchick–Alloy attempted to put A.L. at ease by coloring pictures with her and discussing "light" topics. Ms. Demchick–Alloy then explained to A.L. her role as a prosecutor and asked A.L. if she had anything she wanted to tell her. A.L. said that she did, but insisted that Mr. Simon and her foster mother leave the room. A.L. then made a statement to Ms. Demchick–Alloy, the substance of which was memorialized in a statement Ms. Demchick–Alloy made to Trooper McFadden. A.L. reported to Ms. Demchick–Alloy that defendant put his "hot dog" into her mouth. Ms. Demchick Alloy testified:

> And at this point, [A.L.] is sobbing, a painful gut-wrenching sob, kind of taking a deep—taking a deep breath when kids really are sobbing, and holding on to me.

> And when I asked her, "Did he put it anywhere else," she pointed down to her genitals.

Trooper McFadden testified that, following A.L.'s statement to Ms. Demchick–Alloy, he interviewed A.L. at A.L.'s foster home on June 26, 2003. Trooper McFadden testified that A.L. was distraught and reluctant to talk to him, but that she ultimately told him that defendant had been putting his "hot dog" in her mouth since she was four years old.

A.L. herself testified at defendant's trial. Although clearly reluctant to discuss what had happened to her, A.L. ultimately testified that she and defendant played a "game" in defendant's basement during which defendant put his "stick" in her mouth and made her "suck on" it. A.L. further testified that defendant touched her "private parts" with his "stick."

The jury returned its verdict on April 19, 2004. On April 22, 2005, following a presentence investigation, defendant appeared before the undersigned for sentencing.

With respect to defendant's crimes against A.L. for the crime of rape, defendant was sentenced to not less than six and one half (6½) nor more than thirteen (13) years imprisonment. A concurrent sentence of not less than six and one half (6½) nor more than thirteen (13) years imprisonment was imposed for defendant's conviction for involuntary deviant sexual intercourse, with defendant's convictions for statutory sexual assault and indecent assault merging for purposes of sentence. The court imposed a sentence of not less than one and one half (1½) nor more than three (3) years imprisonment for defendant's conviction for endangering the welfare of A.L., with this sentence to be served consecutively to the previously imposed sentences.

With respect to defendant's crimes against C.R., for the crime of criminal attempt to commit voluntary deviate sexual intercourse, the court sentenced

defendant to not less than four (4) nor more than nine (9) years imprisonment, with said sentence to be served consecutively to the sentences previously imposed, and with defendant's conviction for criminal solicitation merging for purposes of sentence.

The court thus imposed an aggregate sentence of not less than twelve (12) nor more than twenty-five (25) years imprisonment.

On April 29, 2005, defendant, now represented by Burton A. Rose, Esquire, filed a post-sentence motion on defendant's behalf, pursuant to Pa.R.Crim.P. 720(B)(ii)(iv), raising claims of ineffectiveness on the part of defendant's trial counsel, Richard D. Winters, Esquire, and further contending that the evidence presented at trial was insufficient to sustain defendant's conviction for attempt to commit involuntary deviate sexual intercourse and indecent assault upon C.R. on February 26, 2003. An evidentiary hearing was held on defendant's post-sentence motion on June 24, 2005, and the undersigned denied said motion by order dated September 14, 2005.

Trial Court Opinion, 11/30/05, at 1–7 (footnotes and record citations omitted).

¶ 3 Appellant raises the following issues for our review:

1. Was the evidence sufficient to support the Appellant's convictions for Criminal Attempt to commit Involuntary Deviate Sexual Intercourse and Indecent Assault?

2. Was trial counsel ineffective in failing to request that the jury be instructed that it had to return a unanimous verdict as to the criminal objectives pertaining to Criminal Attempt and Criminal Solicitation set forth in Bills 3334.12 and 3334.13–03?

3. Was trial counsel ineffective in failing to require an instruction to the jury that prior consistent statements of the complaining witnesses should not be considered as substantive evidence?

4. Was trial counsel ineffective failing [sic] to protect his client's right to a fair jury trial in the face of a pattern of prosecutorial misconduct and impermissible vouching of the credibility of witnesses?

Appellant's Brief at 3.[1]

¶ 4 We have reviewed the parties' briefs, the applicable law, the record, and the trial court opinion, and we conclude that the trial court's well-reasoned opinion aptly addresses Appellant's first, second, and fourth issues. For the reasons set forth in the trial court's opinion, each of these three issues lacks merit.[2]

■ ¶ 5 We now turn our attention to Appellant's third argument, in which he posits that the trial court erred in admitting statements of A.L. and C.R. as substantive evidence pursuant to 42 Pa.C.S.A. § 5985.1. Section 5985.1, known as the tender years exception to the hearsay rule, governs the admissibility of statements by child victims who are age 12 or younger at

1. The docket does not reflect that the trial court entered an order pursuant to Pa.R.A.P. 1925(b).

2. Specifically, we agree with the conclusions of the learned Judge William T. Nicholas (1) that the evidence, principally the testimony of the victim, C.R., was sufficient to sustain the convictions for criminal attempt to commit involuntary deviate sexual intercourse and indecent assault, (2) that the unanimous verdict of the jury was specific as to its findings on both charged objects of Appellant's attempt and solicitation convictions, and (3) that there was no basis upon which to conclude that trial counsel was ineffective in failing to object to alleged prosecutorial misconduct and improper vouching for the credibility of witnesses.

the time they give the statements. Appellant argues, relying upon Pa.R.E. 613(c), that the victims' prior consistent statements should have been admitted only as corroborating evidence. Appellant further argues that his counsel was ineffective in failing to raise this issue before the trial court.

¶ 6 In *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002), our Supreme Court held that, in most cases, claims of ineffective assistance of counsel should be reserved for collateral review. In *Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831 (2003), however, our Supreme Court held that review of an ineffective assistance claim is appropriate on direct appeal where the trial court develops a record on the alleged ineffectiveness and issues an opinion addressing the defendant's ineffectiveness claims. Inasmuch as the trial court held a hearing on Appellant's ineffectiveness claims and issued an opinion addressing them, we conclude that review on direct appeal is appropriate. *Bomar.*

¶ 7 We review the trial court's denial of relief on an ineffective assistance claim to determine whether the court's findings are supported in the record and its conclusion is free of legal error. *Commonwealth v. Manuel,* 844 A.2d 1, 7 (Pa.Super.2004).

> To prevail on an [ineffectiveness] claim, the appellant must overcome the presumption of competence by showing that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different. A failure to satisfy any

prong of the test for ineffectiveness will require rejection of the claim.

*Id.*

¶ 8 As we have already noted, Appellant argues that the trial court erroneously admitted the victims' prior statements as substantive evidence pursuant to the tender years statute. That statute provides as follows:

> **§ 5985.1. Admissibility of certain statements**
>
> **(a) General rule.**—An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in [18 Pa.C.S.A., chapter 31, relating to sexual offenses], not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:
>
> (1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
>
> > the child either:
> >
> > > (i) testifies at the proceeding; or
> > >
> > > (ii) is unavailable as a witness.

42 Pa.C.S.A. § 5985.1(a).

¶ 9 The tender years statute creates an exception to the hearsay rule in recognition of "the fragile nature of young victims of sexual abuse." *Commonwealth v. Lukowich,* 875 A.2d 1169, 1172 (Pa.Super.2005). The tender years statute allows statements made by a child victim of sexual assault to be admitted into evidence, if the statements are relevant and sufficiently reliable. *Commonwealth v. Lyons,* 833 A.2d 245, 255 (Pa.Super.2003). We will not reverse the trial court's decision to admit evidence pursuant to the tender years statute absent an abuse of discretion. *Id.*

¶ 10 Appellant does not argue that either of the victims' statements lacks sufficient indicia of reliability. Moreover, the record reflects that both victims testified at trial. Appellant argues, nonetheless, that the trial court should have instructed the jury that the victims' prior statements were admissible only to corroborate their trial testimony, and not as substantive evidence.

■ ¶ 11 As support for his argument, Appellant cites Pa.R.E. 613(c), which provides in pertinent part as follows:

(c) **Evidence of prior consistent statement of a witness.** Evidence of a prior consistent statement by a witness is admissible for rehabilitation purposes if the opposing party is given an opportunity to cross-examine the witness about the statement, and the statement is offered to rebut an express or implied charge of:

(1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose[.]

Pa.R.E. 613(c). Thus, pursuant to Rule 613(c), prior consistent statements are admissible to rebut a charge of fabrication, but are not admissible as substantive evidence. *See Commonwealth v. Polston,* 420 Pa.Super. 233, 616 A.2d 669, 674 (1992).[3]

¶ 12 In the instant matter, Appellant took the stand in his own defense and denied the victims' accusations. The victims' prior statements came in through the testimony of a police officer and a social worker. Appellant posits, pursuant to Rule 613(c) and *Polston,* that those prior statements should have been admitted solely to bolster the victims' credibility in light of Appellant's denial of the victims' version of events. Appellant argues that

we should interpret § 5989.1 in accordance with Rule 613(c), since both provide for the admission of prior consistent statements and since Rule 613(c) was enacted after § 5989.1. To allow the victims' statements in as substantive evidence under § 5985.1 would, according to Appellant's argument, create conflict between that section and Rule 613(c).

¶ 13 Appellant's argument fails to account for the fundamental differences between § 5985.1 and Rule 613(c). First, § 5985.1 creates an exception to a rule that generally prohibits hearsay on the basis of unreliability. *Lukowich; see also* Pa.R.E. 801(c) (" 'Hearsay' is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence **to prove the truth of the matter asserted.**"); Pa.R.E. 802 (hearsay is not admissible in evidence except as provided by rule or statute). In order to procure admission of a child's statement through § 5985.1, the Commonwealth must notify the adverse party of the particulars of the statement to be offered in evidence. *See* § 5985.1(b). Then, the Commonwealth must demonstrate that the child's statements are sufficiently reliable. *See* § 5985.1(a). Upon compliance with these requirements, the victim's hearsay statement—by definition, an out-of-court statement offered **to prove the truth of the matter asserted**—becomes admissible.

¶ 14 Section 5985.1 recognizes special circumstances present when a child is a victim of, or witness to, a sexual offense or other specified crime. *Lukowich.* Section 5985.1 allows the trial court to admit the child's prior testimony regardless of any charge of fabrication. Furthermore, the express language of § 5985.1(a)(2)(ii) contemplates that a child's prior statement may be admitted into evidence even if the

---

**3.** We note that *Polston* predates the Rules of Evidence.

child is determined to be unavailable to testify at trial.

¶ 15 This is in stark contrast to Rule 613(c), which governs rehabilitation of a testifying witness. Statements admitted only as corroborating evidence pursuant to 613(c) are, by definition, not hearsay. That is, prior consistent statements are not offered to prove the truth of the matter asserted, but rather are offered simply to show that the witness's testimony is consistent.

¶ 16 Appellant does not challenge the trial court's findings that admission of the victims' out-of-court statements is appropriate pursuant to § 5985.1(a). Also, Appellant does not challenge the Commonwealth's compliance with the notice provisions set forth in § 5985.1(b). Since the Commonwealth proved the applicability of an exception to the hearsay rule, the trial court neither erred nor abused its discretion when it admitted the victims' hearsay statements as substantive evidence.

¶ 17 This Court's opinion in *Commonwealth v. Hunzer*, 868 A.2d 498 (Pa.Super.2005), relied upon by Appellant, does not warrant a different result. In *Hunzer*, the trial court admitted evidence of the victim's prior statements pursuant to § 5985.1. During trial, the defendant's attorney cross-examined a Commonwealth witness with prior inconsistent statements that the victim had made to the witness. The trial court allowed the Commonwealth to rehabilitate the witness by eliciting prior consistent statements that the victim had made to the witness. *Id.* at 511–512. We affirmed the trial court's admission of the victim's statements to the witness. We further noted with approval the trial court's instruction that those statements, which were not part of the Commonwealth's proffer under § 5985.1, were admissible only to restore the credibility of the witness. *Id.* at 512–514. Thus, nothing in *Hunzer* suggests that statements admitted pursuant to § 5985.1 are admissible **only** as corroborating evidence.

¶ 18 In light of the foregoing, we conclude that the issue underlying Appellant's ineffective assistance claim lacks arguable merit. The trial court properly admitted the victims' statements as substantive evidence pursuant to § 5985.1 and did not err in denying relief on Appellant's ineffective assistance claim.

¶ 19 Since we have concluded that Appellant is not entitled to relief on any of the issues he has raised in this appeal, we affirm the judgment of sentence.

¶ 20 Judgment of sentence affirmed.