J-S26039-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                       :          PENNSYLVANIA
                                         :
            v.                             :
                                         :
                                         :
MARK K BROWN                      :
                                         :
            Appellant              :       No. 318 MDA 2022

Appeal from the Judgment of Sentence Entered November 18, 2021
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0004485-2018

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:     **FILED: AUGUST 23, 2022**

Appellant Mark K. Brown appeals from the judgment of sentence of fourteen (14) years to forty (40) years in prison entered in the Court of Common Pleas of Lancaster County on November 18, 2021, following his convictions of numerous sexual offenses against a minor child, B.T.P.[1] Following our review, we affirm.

The trial court set forth the relevant facts and procedural history herein as follows:

### PROCEDURAL BACKGROUND

By Criminal Information docketed to Number CP-36-Cr0004485-2018, Appellant was charged with allegedly having committed four counts of Rape of a Child[1], four counts of Involuntary Deviate Sexual Intercourse with a Child[2], two counts of Indecent Assault[3], one count of Corruption of Minors[4], and one

---

[*] Former Justice specially assigned to the Superior Court.
[1] We will refer to the minor victim by his initials or as "the Child" to protect his identity.

count of Unlawful Contact with a Minor[5]. These incidents were to alleged to [have] occurred between September 1, 2017 and November 30, 2017 in New Holland Borough, Lancaster County Pennsylvania.

Trial commenced on April 12, 2021, before this member of the trial court and a jury. It is noted that prior to the commencement of trial, the Commonwealth withdrew two counts of Rape of a Child and two counts of Involuntary Sexual Intercourse with a Child, which were previously indicated as Counts 3, 4, 7, and 8 on the Criminal Information. (N.T., Trial, April 13, 2021, P. 54), On April 14, 2021, Appellant was found guilty of all remaining charged counts.[6] The trial court deferred sentencing pending the completion of a Pre-Sentence investigation, with sentencing initially scheduled for September 24, 2021. Due to certain medical concerns sentencing was rescheduled until November 18, 2021.

On November 18, 2021, the court sentenced Appellant as follows:

Count 1 -- Rape of A Child — Not less than fourteen nor more than forty years' incarceration in the state correctional system.

Count II — Rape of a Child —Not less than fourteen nor more than forty years' incarceration in the state correctional system. This sentence was imposed concurrently with Count I.

Count III — Involuntary Deviate Sexual Intercourse— Merged with Count I.

Count IV — Involuntary Deviate Sexual intercourse — Merged with Count II.

Counts V through VIII — Indecent Assault (2 counts), Corruption of Minors, and Unlawful Contact with a Minor — As to each count, not less than three years and six months nor more than seven (7) years' incarceration in the state correctional system. All such sentences were imposed concurrently with Count I.

Appellant was also ordered to pay the costs of prosecution and restitution in the amount of $1,178. In addition, it was noted that Appellant was not eligible for participation in the RRRI

Program, Motivational Boot Camp Program, State Drug Treatment Court Program, or Short Sentence Parole Program and that the attorney for the Commonwealth did not waive any such ineligibility. Appellant was made subject to the required provisions of the Sexual Offender Registration and Notification Act. In addition, Appellant was ordered to provide the required DNA sampling and to pay any associated costs thereof, was recommended for any educational, vocational, drug and alcohol, or any other programming deemed necessary by the Pennsylvania Department of Corrections and advised that he would be subject to any conditions imposed by the Pennsylvania Board of Probation and Parole.

On November 19, 2021, Appellant filed a Post-Sentence Motion seeking a reduction in sentence and withdrawal by trial counsel as counsel for Appellant. By order dated November 29, 2021, and filed on November 30, 2021, the court denied Appellant's Post-Sentence Motion seeking a modification of sentence and granted trial counsel leave to withdraw as counsel for Appellant.

Subsequently, on December 1, 2021, Attorney MaryJean Glick of the Office of the Public Defender of Lancaster County entered her appearance on behalf of Appellant. On December 29, 2021, Appellant filed a timely Notice of Appeal with the Superior Court of Pennsylvania. By order dated December 30, 2021, Appellant was directed to file a concise statement of errors complained of on appeal within twenty-one days.

On January 4, 2022, Attorney Diana C. Kelleher, also of the Office of the Public Defender of Lancaster County, entered her appearance and withdrew the appearance of Attorney MaryJean Glick for the Appellant.

On January 14, 2022, Appellant filed a Motion for Extension of time to file Statement of Errors based upon the change in counsel and resulting delays in transcription of all relevant proceedings. By order of January 18, 2022, the court granted this request and directed that any statement of errors was due within twenty-one days following receipt of all transcripts. On February 9, 2022, Appellant filed his statement of errors complained on appeal. As such, this matter is ripe for review.[7]

---

[1] 18 Pa.C.S.A. § 3121(c).
[2] 18 Pa.C.S.A. § 3123(b).
[3] 18 Pa.C.S.A. § 3126(a)(7).
[4] 18 Pa.C.S.A. § 6301(a)(1)(ii).

[5] 18 Pa.C.S.A. § 6318(a)(1).

[6] It is noted that the remaining counts were renumbered on the verdict slip presented to the jury in this matter so as to make no reference to the counts withdrawn by the Commonwealth.

[7] By correspondence dated March 1, 2022, this court requested a thirty-day extension of time to submit the Opinion in this matter as a result of the transcription delays and delayed filing of Appellant's Statement of Errors.

Trial Court Opinion, filed 3/23/22 at 1-4.

In his brief, Appellant presents the following Statement of Question Presented:

Did the trial court err in admitting the out of court statements made by the victim to his babysitter, Chase Joseph, where the content and circumstances of those statements did not demonstrate sufficient indicia of reliability as required for the tender years exception to the hearsay rule?

Brief for Appellant at 6.

Generally, this Court's standard of review for evidentiary rulings, including the admission of hearsay, is abuse of discretion. **Commonwealth v. Walter**, 625 Pa. 522, 93 A.3d 442, 449 (2014). "Issues of statutory interpretation are questions of law; our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Luster**, 234 A.3d 836, 838 (Pa.Super. 2020). As such, we review a trial court's decision to admit evidence pursuant to the "Tender Years Statute"[2] for an abuse of discretion. **See Commonwealth v. Curley**, 910 A.2d 692, 697 (Pa.Super. 2006) (citation omitted).

---

[2] 42 Pa.C.S.A. § 5985.1.

It is well-settled that the "Tender Years Statute creates an exception to the hearsay rule in recognition of the fragile nature of the victims of childhood sexual abuse." *Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 988 (Pa.Super. 2007) (citation omitted). Specifically, the statute provides as follows:

**(a) General rule.--**

(1) An out-of-court statement made by a child victim or witness, who at the time the statement was made was 16 years of age or younger, describing any of the offenses enumerated in paragraph (2), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

(i) the court finds, in an *in camera* hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(ii) the child either:

(A) testifies at the proceeding; or

(B) is unavailable as a witness.

42 Pa.C.S.A. § 5985.1(a).

The Act also includes a notice requirement that states:

A statement otherwise admissible under subsection (a) shall not be received into evidence unless the proponent of the statement notifies the adverse party of the proponent's intention to offer the statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence to provide the adverse party with a fair opportunity to prepare to meet the statement.

42 Pa.C.S.A. § 5985.1(b).

Herein, Appellant admits that B.T.P.'s disclosure to Mr. Joseph had been made spontaneously while the latter was babysitting and that there was no

evidence to show the Child had a motive to fabricate his statements. ***See*** Brief for Appellant at 14. However, while he admits that Mr. Joseph described the Child as "uneasy" and displaying "a lot of facial tics," N.T., Tender Years Hearing/Trial, 4/12/21 at 43, Appellant posits that because no testimony was presented that "the victim was crying, or upset, or overly emotional when making the disclosure," the trial court erred when it characterized B.T.P. as being "rather emotional" and "quite emotional" for purposes of applying the tender years doctrine. Brief for Appellant at 15.

Appellant also points to inconsistencies in the terminology B.T.P. used in describing Appellant's actions with Mr. Joseph, a nurse practitioner, and the forensic interviewer as proof that the Child's statement lacked the necessary indicia of reliability. ***Id***. at 16-18. Appellant reasons the unreliability is compounded by the fact that Mr. Joseph has suffered a "traumatic brain injury" which made his testimony unreliable. ***Id***. at 18-19.

When considering these arguments, the trial court reasoned as follows:

> Our appellate courts have held that the test for establishing whether a child's testimony provides the sufficient indicia of reliability requires a trial court to consider the totality of the attendant circumstances. Stated another way, our Superior Court has held that, "pursuant to the Tender Years Hearsay Act, a trial court must consider the totality of the circumstances when determining whether a child's out-of-court statement is trustworthy." ***Commonwealth Y. Lyons***, 833 A.2d 245, 253 (Pa. Super. 2003). The statute requires "indicia of reliability" which "include, *inter alia*, the spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age, and lack of motive to fabricate." ***Strafford***, 194 A.3d at 173.

- 6 -

In this matter, the trial court conducted a hearing outside of the presence of the jury relative to the Commonwealth's request to admit certain statements of the child victim at trial pursuant to 42 Pa.C.S.A. §5985.1. Specifically, on April 12, 2021, the Commonwealth presented the testimony of Julie Stover, a medical provider who had been employed by Lancaster General Health and the Lancaster County Children's Alliance. Ms. Stover testified regarding certain statements made to her by the child victim during a physical examination that she conducted on January 22, 2018. (N.T., Trial, 4/12/21, p. 7). During this examination, the child victim made statements including that Appellant's actions "made him feel weird", that Appellant's "junk touched my junk", and that both Appellant and the child victim had their pants down during the alleged assaults. (N.T., Trial, 4/12/21, pp. 8-9). Next, the Commonwealth presented the testimony of Karen Melton, a forensic interviewer also employed by the Lancaster County Children's Alliance. Ms. Melton testified regarding certain statements made to her by the child victim during a forensic interview that she conducted with the child victim on January 22, 2018. (N.T., Trial, 4/12/21, p. 23). This forensic interview was recorded by audio and visual means. (N.T., Trial, 4/12/21, p.23), A copy of this recording was introduced as Commonwealth Exhibit Number 3 and was reviewed in its entirety by the court. On April 13, 2021, the Commonwealth presented the testimony of the child victim's babysitter, Chase Joseph. Mr. Joseph testified regarding the initial disclosure made to him by the child victim on December 1, 2017, when the child was seven years of age. Mr. Joseph indicated that the child victim made statements such as: the fact that he needed to tell Mr. Joseph a secret; that Mr. Joseph could not tell the victim's mother the secret; the victim was talking about testicles and masturbation; the victim indicated that Appellant showed him how to masturbate and made motions demonstrative of such; the victim asked Mr. Joseph if he knew what testicles and a penis were used for; and, the victim indicated that Appellant showed him that "when you grab it and you go up and down, it will make it come out". (N.T., Trial, 4/13/21, pp. 39-44). In addition, Mr. Joseph testified that the child victim was demonstrating visual tics and uneasiness during this disclosure. (N.T., Trial 4/13/21, pp. 42-43). Mr. Joseph did indicate that his recollection of this disclosure was "a bit jumbled" as he suffers from a traumatic brain injury, although he was able to provide his testimony in detail. (N.T., Trial, 4/13/21, p. 46).

At the conclusion of the tender years hearing, the Commonwealth moved to admit the relevant statements made by

the child victim to Ms. Stover, Ms. Melton, and Mr. Joseph at trial under 42 Pa.C.S.A. § 5985.1. Trial counsel offered no objection to the admission of the statements made to Ms. Stover and Ms. Melton. Trial counsel objected to the admission at trial of the statements made to Mr. Joseph. (N.T., Trial, 4/13/2 1, p. 51). Trial counsel argued that Mr. Joseph's testimony failed to meet the required standard for the tender years exception because the witness stated that he had a traumatic brain injury, that his recollection was a bit jumbled, and that the statements allegedly made by the child victim to Mr. Joseph were "a little bit different tha[n] what he told the forensic interviewer and the nurse practitioner." (N.T., Trial, 4/12/21, p. 51).

In response, although admittedly stated in a somewhat inarticulate manner, this court noted that Mr. Joseph's individualized concerns seemed to be appropriate for cross-examination at trial but noted that the relevant factors in assessment of indicia of reliability pertain to the child victim as the declarant. (N. T., Trial, 4/13121, p. 5l).

In reaching the determination to admit the statements offered by the child victim to Mr. Joseph at trial, this court considered that: the statements were spontaneously made by the child; there existed limited inconsistency in the child's statements; the mental state of the child victim; the child's use of unexpected terms; the lack of any evidence demonstrative of a motive to fabricate on the part of the child; and, the emotional state of the child when making the challenged disclosures. (N.T., Trial, 4/13/21, pp. 51-52). Upon consideration of the totality of the evidence presented, the court admitted the statements made by the child victim to Mr. Joseph at trial. (N.T., Trial, 4/13/21, pp. 53-54).

In summary, this court found that the totality of the evidence presented demonstrated a sufficient indicium of reliability as to the disclosures made by the child victim. As noted, the court recognized that the child used the term "testicles", which is an uncommon word for a person at the tender age of seven. Additionally, the child's disclosures were unprompted and spontaneous in that the child, during play, told Mr. Joseph that he had a secret that he needed to share, although the secret should not be shared with the child's mother. Importantly, no evidence was produced suggestive of any motive for the child to fabricate and the child was quite emotional upon making such disclosure. It is recognized that, although there was a slight inconsistency with the statement made by the child to Mr. Joseph regarding the naming of a part of human anatomy, there was no inconsistency

- 8 -

regarding the alleged abusive actions. Accordingly, any inconsistency was not so significant as to outweigh the other indicia of reliability. As such, the court finds that Appellant's sole claim lacks merit.

Trial Court Opinion, 3/23/22, at 5-8.

The certified record supports the trial court's findings. First, with regard to his contention that there must be a finding by the trial court that B.T.P. was in danger of serious emotional distress, Appellant has misread or misapprehended the Tender Years Statute. The statute requires such a finding only where the Commonwealth seeks to excuse the child from testifying:

> **(a.1) Emotional distress.**—In order to make a finding under subsection (a)(1)(ii)(B) that the child is unavailable as a witness, the court must determine, based on evidence presented to it, that testimony by the child as a witness will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate. In making this determination, the court may do all of the following:
>
> (1)    Observe and question the child, either inside or outside the courtroom.
>
> (2)    Hear testimony of a parent or custodian or any other person, such as a person who had dealt with the child in a medical or therapeutic setting.

42 Pa.C.S.A. § 5985.1(a.1). Instantly, B.T.P. testified at trial; thus, there was no need for this finding.

At the Tender Years Statute hearing, which was held immediately prior to trial, Ms. Stover testified she had done approximately 3,000 evaluations of children pertaining to sexual abuse. N.T., Tender Years Hearing/Trial, 4/12/21, at 6. On January 22, 2018, Ms. Stover performed a physical

examination on B.T.P. and completed a written report thereafter. *Id*. at 7. Ms. Stover could not remember his demeanor at that time, but she explained that the Child referred to his penis as his "junk." *Id*. at 9.

Ms. Melton testified she is a forensic interviewer at Lancaster County Children's Alliance and has conducted about 1,700 forensic interviews. *Id*. at 17-18. After explaining her methodology, Ms. Melton indicated that the copy of the DVD the Commonwealth had presented as Exhibit 3 fairly and accurately depicted her interview with B.T.P. on January 22, 2018. *Id*. at 25-26. On cross-examination, Ms. Melton explained that any knowledge of a case she may have prior to her interview is inapposite as it will not impact how she asks a child questions. *Id*. at 27. She also explained it is not her job to make credibility determinations pertaining to the child's disclosure. *Id*. at 32.

Mr. Joseph explained he has known B.T.P. since the Child was four weeks old and babysat for him until he was about nine years old. N.T. 4/13/21 at 38-39. On December 1, 2017, as the two were finishing playing with Legos, the Child told Mr. Joseph he has a secret he needed to disclose. *Id*. at 39-40. At the outset, B.T.P., who was seven years old, told Mr. Joseph he could not tell "Mommy" and then proceeded to discuss his "testicles" and his "pee pee" and how Appellant had shown him how to masturbate. *Id*. at 40-41. Mr. Joseph explained he "was kind of floored" and asked B.T.P. what had happened to him. In response, the Child "basically just straight up told [him]

that he was basically being molested without saying that word." *Id*. at 41-42.

Mr. Joseph described B.T.P.'s demeanor during this conversation as follows:

> So he actually had a lot of tics, like nervous tics. And he had his lips and his lips were all red. And that was just a very concerning sign to me that he just had developed these tics. But other than that, he was just kind of—he felt uneasy. I could tell that but I don't know exactly what it was.

*Id*. at 42-43.

Mr. Joseph explained that B.T.P.'s facial tics increased during the time he revealed the sexual abuse, but the Child did not have them anymore. *Id*. at 43. Mr. Joseph told B.T.P.'s mother about the conversation when she came to pick up B.T.P., and he and his father called the police. *Id*. at 45. It is noteworthy that Mr. Joseph testified regarding the Child's statements to him without the need to review the police report which counsel had offered him to refresh his memory.

On cross-examination, Mr. Joseph stated that although his memory sometimes is "a bit jumbled" due to a traumatic brain injury, he explained that "sometimes I'll forget what I'm saying and I'll remember it and I'll just be on track." *Id*. at 46. Mr. Joseph did not ask the Child for additional details other than those B.T.P. provided to him on December 1, 2017, because he "didn't want to bring anything open." *Id*. at 47.

At the conclusion of the Tender Years Statute hearing, the following exchange ensued:

> [DEFENSE COUNSEL]: As to the statement of Chase Joseph, I would object. I know the Court has to make a determination on the indicia of reliability and his traumatic brain injury. It's a bit jumbled in his mind as to what exactly he said, what he said that the child told him. It's a little bit different than what he told both the forensic interviewer and the nurse practitioner.
>
> So I don't think they met the burden for tender years exception.
>
> THE COURT: Let me just prod a little bit. Certainly, the issue as to the -- this witness's individualized concerns seem to be fair game for cross-examination at trial, but really the factors in assessment of indicia or reliability deals with factors independent of the statement of the child as to the declarant.
>
> Those factors include spontaneity, which this appears, if accepted by the [c]ourt to be a spontaneous admission or acknowledgment of the child.
>
> And the next factor, I will concede that it's inconsistent from the other statements they heard, but there's talk of other factors including mental state of declarant, use of unexpected terms, lack of motive to fabricate. We really haven't heard anything about any motive to fabricate. There was some testimony that these were big words for the child and there was also testimony that the child was rather emotional upon this disclosure.
>
> So is -- I guess upon consideration of those factors, how does that alter or affect the argument that you are making?
>
> [DEFENSE COUNSEL]: My argument would be that those factors are dependent upon the credibility and the accuracy of the witness's statement and when the witness is stating that he has a traumatic brain injury and his memory is jumbled, I don't believe that the [c]ourt can rely on the accuracy of it being spontaneous or consistent or using big terms.
>
> That would be my argument.
>
> THE COURT: This witness didn't say he wasn't able to recall. He admitted some cloudiness or confusion. It took him a few minutes to clarify his answers.
>
> I understand your argument.

[DEFENSE COUNSEL]: That's the credibility issue, and if the [c]ourt is satisfied with that then.

THE COURT: Very well.
Ms. Ponessa?

[THE PROSECUTOR]: Yes, Your Honor. Just adding on everything that you said, credibility, obviously, is a question for the jury. And also he did say that he remembered these things. And I wouldn't say they are extremely inconsistent from what he said to the officer at the time; maybe a few things are a little different. But it was the same thing about him showing the masturbating and that [Appellant] taught him to get the sperm out of the testicles. Although testicles might have been a big word, again he said that he learned this from [Appellant] but used the word pee pee to describe his penis, which is terminology expected of his age.
There's no motive to fabricate; that was completely spontaneous. And there's nothing to indicate that his mental state -- the child's mental state that there are any deficiencies there.
So I would request that the statement be brought in.

THE COURT: All right. Very well. Then upon consideration of the matter, I will note that the child is -- the [c]ourt is aware that the child is going to testify at the proceeding. It resolves any proffer related claims.
Upon consideration of the appropriate factors, I will grant the Commonwealth's motion to admit all three of the proffered statements into evidence at trial under the Tender Years Exception.

*Id*. at 51-54.

Before making its determination, the trial court had the benefit of not only Mr. Joseph's testimony, but also that of Ms. Stover and Ms. Melton. In rendering its decision, the court considered the inconsistencies in the terminology the Child used when speaking to these adults as well as his emotional reactions as he related his allegations to Mr. Joseph. Furthermore, it noted at the Tender Years Statute hearing that Appellant could explore Mr.

Joseph's brain injury and memory difficulties on cross-examination at trial; however, this topic was not raised at that time. *Id*. at 122-126. Furthermore, the Commonwealth called then ten-year-old B.T.P. as its first witness at trial, and he was subject to an extensive cross-examination. *Id*. at 89-116.

In setting forth his arguments in support of his issue presented on appeal, Appellant essentially asks this Court to reweigh Mr. Joseph's testimony and make our own credibility determinations to reach a different result. This we cannot do. In light of the foregoing, we find the trial court did not abuse its discretion in finding the challenged statements demonstrated sufficient indicia of reliability to be admissible under 42 Pa.C.S.A. § 5985.1 of the Tender Years Statute.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/23/2022