J-S24027-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | | |
|---|---|---|---|
| N.C.F. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| S.H.F. | : | | |
| | : | | |
| Appellant | : | No. 122 MDA 2023 | |

Appeal from the Order Entered December 20, 2022
In the Court of Common Pleas of York County Civil Division at No(s):
2022-FC-000452-12C

| | | | |
|---|---|---|---|
| K.A.F. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| S.H.F. | : | | |
| | : | | |
| Appellant | : | No. 123 MDA 2023 | |

Appeal from the Order Entered December 20, 2022
In the Court of Common Pleas of York County Civil Division at No(s):
2022-FC-000452-12B

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:          **FILED: AUGUST 29, 2023**

S.H.F. (Father) appeals from the orders,[1] entered in the Court of

Common Pleas of York County, issued pursuant to the Protection from Abuse

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Three PFA orders were entered against Father on behalf of his three minor
children, M.F., K.F., and N.F.  Father appeals only those orders pertaining to
K.F. and N.F.

(PFA) Act, 23 Pa.C.S.A. §§ 6101-6122.  After careful review, we vacate and remand.[2]

On May 25, 2022, N.A.F. (Mother) filed a PFA petition against Father on behalf of the parties three minor children, M.F. (born Nov 2017), K.F. (born Jan. 2018), and N.F. (born Sept. 2019).[3]  The petition alleged that Father, during a trip alone with K.F., had refused to allow K.F. to wear pajamas or under garments to bed and that Father had K.F. had taken a shower together. The petition also alleged that Father had had inappropriate contact with M.F. at hotels, in RV campers and at home.  **See** Protection from Abuse Petition, 5/25/22, at 2.  On the same day, temporary PFA orders were entered against Father with regard to Mother and all three children.  On December 19, 2022, the court held a final PFA order hearing at which Mother, M.F.,[4] and Arnold Shienvold, Ph.D., a qualified expert in psychology, testified.

Mother testified that on March 6, 2022, K.F. returned home from a weekend trip in Connecticut with Father and disclosed to Mother that she had suffered "sexual abuse" by Father.  N.T. Final PFA Hearing, 12/19/22, at 20. At this point in Mother's testimony, defense counsel objected to any hearsay statements regarding K.F.  **See id.** at 22 (Defense counsel stating "[Mother]

---

[2] Mother did not file a brief in this matter.

[3] Mother initially filed a PFA petition on March 7, 2022, but incorrectly listed herself as the only protected party.  There is an ongoing custody matter between Father and Mother.

[4] M.F. was questioned by the trial court judge *in camera*, not in open court.

didn't really testify about any specifics, but I am going to have a continuing objection if [the court] is going to allow [Mother] to testify about specifics.") Thereafter, the trial court conducted a Tender Years analysis **on the record** to determine whether it would permit hearsay statements of K.F. **_See_** 42 Pa.C.S.A. § 5985.1 (Admissibility of certain statements).[5]

---

[5] "Hearsay is inadmissible unless it falls into one of the exceptions to the hearsay rule." **_Commonwealth v. O'Drain_**, 829 A.2d 316 (Pa. Super. 2003). Tender Years statue, [set forth at 42 Pa.C.S.A. § 5985.1], with respect to described certain offenses, "creates an exception to the hearsay rule in recognition of the fragile nature of young victims of sexual abuse." **_Commonwealth v. Curley_**, 910 A.2d 692, 697 (Pa. Super. 2006) (citations and quotation marks omitted); **_see also_** 42 Pa.C.S.A. § 5985.1(a)(2) (enumerating offenses subject to Tender Years Statute). Specifically, 42 Pa.C.S.A. § 5985.1 (Admissibility of certain statements) provides the following:

(a)　General rule.—

(1)　An out-of-court statement made by a child victim or witness, who at the time the statement was 16 years of age or younger, describing any of the offenses enumerated in the paragraph (2), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

(i)　the court finds, **in an _in camera_ hearing**, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; **and**

(ii)　the child **either**:

(A)　testifies at the proceeding; or

(B)　is unavailable as a witness.

*(Footnote Continued Next Page)*

The court stated that the notice requirement of the Tender Years statute was satisfied due to the "fairly lengthy description [] of [K.F.]'s comments [] within the language of the PFA itself. . . . [The] PFA complaint [] contains statements that can only really come from the child[.]" N.T. Final PFA Hearing, *supra* at 26. The trial court considered the statement's relevance concluding, "[t]here's no question to me at all about [relevance]. It's relevant. Daddy is sleeping with me naked. That's pretty relevant to what's going on here today." *Id.* Regarding reliability, the court stated, "[T]his is a conversation between a four-year-old and her mother in a family home without any third-party present." *Id.* at 30-42. The court then requested that both parties' attorneys question Mother regarding whether testifying would cause K.F. emotional distress which would prevent her from clearly

---

(a.1) Emotional distress.—In order to make a finding under subsection (a) (1) (ii) (B) that the child is unavailable as a witness, the court must determine, based on evidence presented to it, that testimony by the child as a witness will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate. In making this determination, the court may do all of the following:

(1)   Observe and question the child, either inside or outside the court room.

(2)   Hear testimony of a parent or custodian or any other person, such as a person who has dealt with the child in a medical or therapeutic setting.

*Id.* at § 5985.1(a)(1)(i-ii), (a.1) (emphasis added); *see also Curly*, *supra* at 698 (party seeking to admit child victim's statement must notify adverse party of particulars of statement).

- 4 -

communicating to the court. *See* 42 Pa.C.S.A. § 5958.1(a.1) (listing factors court may use to determine whether child victim would suffer serious emotional distress to testify by alternative method).

Mother explained that K.F. is lively, energetic, outgoing, has the attention span of a four-year-old, "occasion[ally]" has emotional regulation difficulties, and has issues related to defiance of authority, which became more apparent after her trip to Connecticut. N.T. Final PFA Hearing, *supra* at 29-30. Mother testified that if K.F. were to testify it would cause her emotional distress "because it would bring up things that [K.F.] has been trying to work on in counseling." *Id.* at 34; *id.* at 29-30 (Mother testifying K.F. attends trauma counseling with Counselor Ott because K.F.'s defiance of authority became more apparent after March 6, 2022 trip with Father; K.F. had been acting out); *id.* at 29 (Mother testifying K.F.'s school called Mother on "several occasions . . . [regarding K.F.'s] defiance of authority).

Mother stated that "[t]hree days after [K.F.] had [] supervised visitation with [F]ather, [K.F.] had nightmares three nights in a row about a monster." *Id.* at 32; *id.* at 36 (Mother conceded that K.F. stated she had so much fun seeing Father after supervised visitation"). K.F. used to draw pictures, in all black, of a "monster with fireworks, a monster on a roller coaster, all things that she did with [F]ather [and] . . . now all of her pictures are rainbows and suns and flowers and houses." *Id.* at 34. Mother also testified,

> K.F. is easily distracted. I think [K.F.] would probably [] get up here [] and want to ask the judge all sorts of questions like what's that, why is that, and [I don't believe] she [has] the focusing

ability to [] sit and answer questions about something that happened nine months ago.

*Id.* at 33.

The court ultimately precluded K.F.'s hearsay statements from being admitted as evidence because she was "available." *See* 42 Pa.C.S.A. § 5985.1(1)(ii)(B). The trial court concluded that "[K.F.] was able to communicate these [incidents] without much regard to whether or not they were actually sources of trauma." N.T. Final PFA Hearing, 12/19/22, at 40.

Mother then continued to testify. Mother testified that she asked M.F. speak to K.F. about the incident. *See* N.T. *In Camera* Proceeding, 12/19/22, at 4; *id.* at 16 (M.F. testifying Mother stated, "[K.F.] just told me that dad had her sleep without her underwear on, can you go in and ask her more about that"); *id.* (M.F. testifying she had never heard Mother so concerned before). M.F. obliged, asking K.F. "what happened when you were on your trip with daddy[?]" K.F. responded that "daddy had me sleep without my underwear on." *Id.* (M.F. testifying "[K.F.] told me very innocently. . . like, factual[ly] but also [] she was kind of confused").

Mother then asked M.F. if anything similar occurred between her and Father. M.F. testified, "I told mom that on some trips that I had gone with dad that he had put his fingers inside my vagina and touched me inappropriately, the bottom half, and that it happened multiple times." *Id.* at 15 (M.F. testifying abuse occurred on four separate occasions); *id.* at 39 (M.F. testifying she and Father traveled alone at least ten times per year; trips

sometimes lasted longer than one week); *id.* at 22 (M.F. testifying Father inserted his fingers inside of her vagina for a few minutes).

M.F. testified that the first incident occurred when she was between the ages of seven and nine in a bed above the cab of a Palomino camper. *Id.* at 10.[6] Father had told M.F. that "he was just kind of checking [her] out" and M.F. "let it go because I thought that it was a **normal thing**." *Id.* (emphasis added); *id.* at 7 (M.F. testifying after first incident she did not ask for any medical assistance or evaluation). M.F. testified that she knew about protecting her "privacy," *id.* at 30, "but he was my dad, so I trusted him." *Id.* The second incident occurred in the bed of a Lance camper, and she did not recall her age at the time. *Id.* at 10-11. The third incident occurred in a hotel room when she was between ten and eleven years old. *Id.* at 11. The fourth incident occurred in the living room of the family's Shaw Road, Windsor Township residence, when M.F. was between the ages of ten and twelve. *Id.* (M.F. testifying family moved to Shaw Road when she was 10 years old). M.F. also testified that although she only remembers these four times, "[she] has a much better memory of things that happened in [her] life after the age of five, so that makes [her] believe that things might have possibly happened, [before then] but . . . there's no evidence for it." *Id.* at 27-28.

When M.F. was 12 years old, she learned Father's conduct "wasn't [normal], so [she] just stopped trying to be around [Father] and going places

---

[6] Palomino RV is a truck and camper company.

overnight with him." *Id.* at 12; *see id.* (M.F. testifying she does not recall how she learned it was not normal); *id.* at 9 (M.F. testifying she stopped traveling alone with Father because "[she] didn't want [the abuse] to keep happening").[7] M.F. testified that once she stopped traveling alone with Father, he started to travel alone with K.F. *Id.* at 9; *id.* at 8-9 (M.F. testifying Father and K.F. have been traveling alone more within past year). M.F. is not afraid Father would do this to her again because she would be able to prevent it, but she is "scared for [K.F.] and possibly [N.F.] because I don't know what he would do [to them]." *Id.* at 17.

Doctor Arnold Shienvold testified that he was asked to render an opinion regarding the best interest of the children with respect to Mother and Father's custody dispute and parenting plan. *Id.* at 88. As part of this analysis, he considered the sexual abuse allegations against Father. *Id.* Doctor Shienvold testified that he did not complete an in-depth interview with K.F. regarding the allegations because he "spoke to [Counselor Alyssa] Ott, the therapist who has been working with K.F., and felt that [Counselor] Ott was able to give [him] a more in-depth view of factors she was looking at[, including] issues related to the therapy." *Id.* at 89-90. Rather he observed a visit between Father and K.F. Doctor Shienvold explained that as the visit progressed, K.F.'s interaction with Father increased and Father showed good parenting

---

[7] M.F. testified that when she first got her period she "asked [Father to take a look. . . . Nothing inappropriate happened that time because I had asked." N.T. *In Camera* Proceeding, *supra* at 7; *id.* (M.F. explaining this instance was in addition to other four instances she described).

techniques, including the use of age-appropriate language. *Id.* at 93-94; *id.* at 93 (Doctor Shienvold testifying "there was no negative component . . . both were enjoying [playing]"). Doctor Shienvold testified that at the end of the session, K.F. hugged Father's arm and said good-bye. K.F. then ran to Mother and "spontaneously exclaimed, 'I had so much fun.'" *Id.* at 95. Doctor Shienvold also testified that he contacted Counselor Ott a few days later, who told him that K.F. stated that "she never wanted to see [Father] again." *Id.* at 96. Counselor Ott explained to Dr. Shienvold that K.F.'s negative reaction could have been delayed and was not surprising. *Id.* Doctor Shienvold concluded that Father was a "low risk of harm" to K.F. and N.F. *Id.* at 89.

Regarding N.F., Mother testified that Father attempted to videotape N.F., who had a black and blue mark on his arm from blood work. *Id.* at 59. Mother testified that Father wanted to use this video against her in court. *Id.* at 60; *see also id.* (Mother testifying visitation supervisor prevents Father "from doing things that are completely out of line").[8]

Following the hearing, the court, *inter alia*, entered separate final PFA orders with regard to K.F. and N.F. Each PFA order provides that Father have no contact with K.F. and N.F. for two years. *See* K.F. PFA Order, 3/15/23, at 1; N.F. PFA order, 3/15/23, at 1. However, N.F.'s order also denotes that the parties have limited contact with each other, *id.* at 2, and that N.F. have

---

[8] N.F. is not mentioned in the PFA petition. *See* PFA Petition, 5/25/22.

supervised visitation with Father. *Id.* at 3.[9] The court also denied Mother's petition as it relates to her, but granted Mother sole physical custody of K.F. and N.F.[10]

Father filed a timely notice of appeal and both he and the trial court have complied with Pa.R.A.P. 1925. Father raises the following issues for our review:

> 1. Did the trial court err as a matter of law and abuse its discretion by granting a [PFA o]rder on behalf of [K.F. and N.F.] based on its finding of abuse with regard to [M.F.]?
>
> 2. Did the trial court err as a matter of law and abuse its discretion by granting a [PFA o]rder on behalf of [K.F. and N.F.] as the record demonstrates that there was no abuse established pursuant to 23 Pa.C.S.A. § 6102 with regard to [K.F. and N.F.]

Appellant's Brief, at 4 (reordered for ease of disposition).

This Court reviews the propriety of a PFA order for an abuse of discretion or an error of law. *Ferko-Fox v. Fox*, 68 A.3d 917, 925 (Pa. Super. 2013).

> When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and[,] granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This [C]ourt defers to the credibility determinations of the trial court as to witnesses who appeared before it.

---

[9] N.F.'s PFA order does not specify how or when no contact becomes limited contact.

[10] The trial court also granted M.F. a PFA order against Father based upon information gathered during her *in camera* hearing. Mother was also granted sole custody of M.F. Father does not appeal M.F.'s PFA order.

***Fonner v. Fonner***, 731 A.2d 160, 161 (Pa. Super. 1999).

> The purpose of the [PFA Act] is to protect victims of domestic violence from the perpetrators of that type of abuse and to prevent domestic violence from occurring. The intent of the remedies under the [PFA Act] is to allow persons to reside peaceably and without injury within their families and/or residences.

***Scott v. Shay***, 928 A.2d 312, 314 (Pa. Super. 2007) (citations omitted). In line with the Act's purpose, "a victim does not have to wait for physical or sexual abuse to occur for the PFA Act to apply, and past acts are relevant to determine the reasonableness of the petitioner's current fear." ***E.K. v. J.R.A.***, 237 A.3d 509, 519 (Pa. Super. 2020). ***See Bruke ex rel. Bruke v. Bauman***, 814 A.2d 206 (Pa. Super. 2022) ("The victim of abuse need not suffer actual injury, but rather be in reasonable fear of imminent serious bodily injury").

> The PFA Act defines abuse, in relevant part, as,

> **"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

> . . .

> (4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).

23 Pa.C.S.A. § 6102(a)(4) (Definitions). ***See*** 23 Pa.C.S.A. § 6303(b.1) (defining "Child abuse"). ***See also Viruet ex rel. Velasquez v. Cancel***, 727 A.2d 591 (Pa. Super. 1999) (by including Child Protective Services Law definition of abuse in PFA Act legislature intended protection under PFA Act to extend to more than acts only causing serious physical injury to child).

- 11 -

The PFA Act also permits courts to award custody of or establish temporary visitation rights regarding minor children due to risks posed by the defendant to the children and plaintiff. ***See*** 23 Pa.C.S.A. § 6108(4). The statute provides that,

> where a court finds[,] after a hearing under this chapter[,] that the defendant has inflicted serious abuse upon the plaintiff or a child or poses a risk of abuse toward the plaintiff or a child, the court may: award supervised visitation in a secure visitation facility; or deny the defendant custodial access to a child.

***Id.*** at § 6108(4)(iii). The court may also "prohibit[] the defendant from having any contact with the plaintiff or minor children, including, but not limited to, restraining the defendant from entering the place of [] school of the plaintiff or minor children and from harassing the plaintiff or plaintiff's relatives or minor children." ***Id.*** at § 6108(6). The court may also "direct[] the defendant to refrain from stalking or harassing the plaintiff and other designated persons." ***Id.*** at § 6108(9).

Father's first issue asserts that the trial court erred and/or abused its discretion in entering a PFA order on behalf of K.F. and N.F. where the record is devoid of credible evidence to support a finding that he abused either of them. Specifically, he argues that the trial court determined it would not permit K.F.'s hearsay statements under the Tender Years Act hearsay exception, but then elicited testimony from M.F. regarding K.F.'s statements

to M.F., and subsequently relied on those statements in entering both final PFA orders. Appellant's Brief, at 20-21.[11]

Father's claim implicates the Tender Years statute. This Court reviews a trial court's decision to admit evidence pursuant to the Tender Years statute for an abuse of discretion. **Commonwealth v. Curley**, 910 A.2d 692, 697 (Pa. Super. 2006). Section 5985.1, in relevant part, provides that a child victim's hearsay statement is "admissible in a criminal or civil proceedings if[] the court finds, **in an *in camera*** hearing that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability." 42 Pa.C.S.A. § 5985.1(1)(i).

Holding an *in camera* hearing is an expressly stated step in the trial court's Tender Year statute analysis. Instantly, however, **on the record**, the trial court determined K.F.'s hearsay statements were relevant because they pertained to the basis of the PFA order and reliable the statements were made in the home and without any third-party present and, thus, reliable. Accordingly, the court attempted to satisfy section 5985.1(a)(1)(ii) without holding a mandatory *in camera* proceeding, in express violation of the statutory language.

Because this procedure is in violation of Section 5985.1, we remand for the court to hold an *in camera* proceeding where it can properly determine

---

[11] The hearsay statements in question relate to any statement K.F. made to Mother or M.F. regarding the specific nature of Father's sexual abuse of K.F, including that "daddy had [K.F.] sleep without underwear on." N.T. *In Camera* Proceeding, **supra** at 3.

- 13 -

whether K.F.'s hearsay statements satisfy the relevancy and reliability requirements of the statute.[12] *See A.N. v. A.L.*, 240 A.3d 148 (Pa. Super. 2020) (Table), (this Court remanded PFA orders regarding three siblings, reasoning "nothing in the certified record indicates that the trial court conducted an *in camera* tender years hearing to determine the reliability of the minor children's statements or the unavailability of the minor children").[13]

Furthermore, regarding N.F., we agree with Father that the record provides no direct evidence that Father has abused N.F. Specifically, M.F.'s testimony regarding her own abuse or Father's abuse of K.F. cannot be used to enter a no contact order on behalf of N.F. *See D.H. v. B.O.*, 734 A.2d 409, 412-13 (Pa. Super. 1999) (evidence insufficient to justify PFA order where respondent's physical threats directed at petitioner's co-worker, not

---

[12] This *in camera* proceeding can also serve to aid the trial court in determining whether K.F. is unavailable under section 5985.1(a.1). *See Commonwealth v. Lyons*, 833 A.2d 245, 254 (Pa. Super. 2003) ("Tender Years Statute **requires** that an *in camera* hearing take place to determine whether a child witness is unavailable to testify"). *Cf. Fidler v. Cunningham-Small*, 871 A.2d 231, 238 (Pa. Super. 2005) ("the PFA Act **does not mandate** the type of evidence upon which the court must rely, [but] it does require that some concrete evidence of serious emotional distress be presented . . . [however,] in the absence of expert witnesses, the trial court's *in camera* examination of the child is the **better practice** in order to insure that the determination of unavailab[ility] is well-founded) (emphasis added). Instantly, an *in camera* hearing with K.F. is better practice where Dr. Shienvold did not conduct an in-depth interview with K.F. and Counselor Ott did not testify. *See* N.T. Final PFA Hearing, *supra* at 89-90.

[13] *See* Pa.R.A.P. 126 (non-precedential memorandum published after May 1, 2019, may be cited for persuasive value).

petitioner).  Additionally, Mother's testimony that Father took pictures of N.F. does not rise to the level of abuse required for the court to enter a PFA order.  **See** N.T. Final PFA Hearing, **supra** at 59.  Indeed, the record does not indicate Father's conduct or failure to act has caused bodily or mental injury to, or sexual abuse of, N.F.  **See** 23 Pa.C.S.A. § 6102(a)(4); **see** 23 Pa.C.S.A. § 6303(b.1).  Accordingly, the court erred in entering a no contact order for N.F. with regard to Father.

However, N.F.'s PFA order denotes that he and Father have no contact **and** limited contact/supervised visitation.  **See** N.F. PFA Order, 3/15/23.  Although a trial court has the authority to enter a no-contact order in the context of a PFA matter, **see infra** n.15, here the trial court erred in entering a no-contact order where there was no evidence that Father abused N.F. and the order was entered to protect Children, not provide relief to M.F.  However, the court was within its authority to order supervised visitation and to deny Father custodial access to N.F.  Thus, we vacate the no-contact portion of the trial court's order as it relates to N.F. and remand for the trial court to conduct

the proper *in camera* proceeding in accordance with the dictates of this decision. ***See supra*** 23 Pa.C.S.A. § 6108(4).[14, 15, 16]

---

[14] Father concedes that "the trial court could, in concert with granting [M.F. a PFA Order], also provide for whatever **custody arrangement** it deemed appropriate pursuant to 23 [Pa.C.S.A. §] 6108 for [K.F. and N.F.]. The trial court could have provided for [F]ather to have supervised visitation or it could have denied all custodial access [to K.F. and N.F.] in fashioning a PFA Order for [M.F.]." Appellant's Brief, at 16 (emphasis added).

[15] Section 6108(a)(6) permits a trial court enter relief for minor children, even without a finding of abuse to those minor children, when that relief protects the plaintiff. ***See E.K. v. J.R.A.***, ***supra*** at 524-25 ("[Minor c]hildren need not be abused directly or be at risk of abuse in order to provide relief to [plaintiff] in ways that involve [minor children]."); ***see*** 23 Pa.C.S.A. § 6108 (a)(6) ("The court may grant any protection order [] to bring about a cessation of abuse of the plaintiff or minor children. The order or agreement may include: **Prohibiting the defendant from having any contact with the plaintiff or minor children**, including, but not limited to, restraining the defendant from entering the place of employment or business or school of the plaintiff or minor children and from harassing the plaintiff's or the plaintiff's relatives or minor children.") (emphasis added).

However, here, the trial court entered K.F. and N.F.'s PFA orders to protect them, not provide relief to M.F. ***See*** Trial Court Opinion, 2/16/23, at 13-14 (Trial court concluding that Father had been engaging in grooming behaviors towards K.F. and it was "not going to wait for [Father] to complete a sexual assault on [her] before protecting her."); ***see also id.*** at 15 (Trial court stating "under the circumstances, [it] was unwilling to allow [Father] to have unfettered access to any child, including [N.F.]").

[16] Because we have disposed of both orders in our discussion of Father's first claim, we need not proceed to the second claim. Additionally, Father's second claim is substantially similar to the first claim in that the second claim again argues that the trial court erred in its reliance on Father's abuse of M.F. to enter K.F. and N.F.'s PFA orders.

Orders vacated and remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2023